## GREENE et al v. GREENE et al.*

(Division B.    Nov. 8, 1926.)

[110 So. 218.    No. 25684.]

1. DESCENT AND DISTRIBUTION. *Book accounts kept by father against children during minority, without anything to show intention to charge them as advancements, will not be held advancements.*

Where a father, in his lifetime, kept books of account against his children during minority and after majority, showing charges and credits without anything on the books to show an intention to charge them as advancements, and no declaration that they were advancements was made as to constitute them a part of the *res gestae*, such book accounts will not be held to be advancements, but will be treated as other book accounts.

2. INFANTS. *Parent and child. Father charging minor children with items on books of account does not create debt against them for things furnished during their minority; infants can be bound only for necessaries; father is personally liable for necessaries of life for infant chidren.*

A father charging his minor children with items on his books of account does not create a debt against such children for things furnished during their minority, as infants can only be bound for necessaries; the father, being charged by law with the support of his infant children, is personally bound for the necessities of life.

3. DESCENT AND DISTRIBUTION. *To constitute "advancement," donor must irrevocably part with title, which must be vested in donee, in lifetime of donor; where no estate which can be alienated is given donee, no advancement is made.*

In order to constitute an "advancement," the donor must irrevocably part with his title in the subject-matter, and such title must become vested in the donee. And this vesting of title in the donee must take place during the lifetime of the donor. Hence, where no estate which can be a'ienated is given to the donee, no "advancement" can be said to have been made.

4. LIMITATION OF ACTIONS. *Three-year statute barring open accounts destroys right as well as remedy; debt of child to father, barred by statute before his death, cannot be set off against child's share in estate; where only remedy is barred by statute of limitations,*

*and debt is unaffected, debt of child to father, although barred
by limitations, may be set off against child's share in father's
estate (Hemingway's Code, section 2479).*

All open accounts are barred by the statute of limitation of three
years under section 2479, Hemingway's Code (section 3115, Code
1906), and such statute of limitation destroys the right as well
as the remedy. Hence the debts of a child to its father, barred
by the statute of limitation before his death, cannot be set off
against the child's share in the estate. The doctrine is otherwise
where only the remedy is barred, and the debt is unaffected by
the statute of limitation.

5. EVIDENCE. *Books of account, regularly and correctly kept in due
course of business, are admissible in favor of owner of accounts;
books of account regularly and correctly kept in due course of
business may be sufficient proof of debts, though no one testifies
to sale of specific articles.*

Books of account, shown by competent testimony to have been reg-
ularly and correctly kept in due course of business are admissible
in favor of the owner of the accounts, and may be sufficient proof
of the debts, although no one testifies as to the sale of the
specific articles charged.

6. EQUITY. *Answer denying charge of bill sworn to by attorney puts
complainant to proof (Hemingway's Code, section 731).*

Section 731, Hemingway's Code (section 1011, Code 1906), provid-
ing that in all cases where an oath is required in any proceeding
such oath may be made by an attorney, an answer denying the
charge of the bill sworn to by the attorney puts the complainant
to proof.

7. ACCOUNT, ACTION ON. *Where bill charged debt of gross amount not
itemized, and answer sworn to by defendant's attorney denied
debt, and itemized sworn account was not embraced in pleadings,
ex parte sworn account was not admissible; ex parte sworn ac-
count, after pleadings in which such account was not embraced
were at issue, did not impose on defendant duty to file counter
affidavit specifying particular items denied (Hemingway's Code,
sections 731, 1638).*

Where a bill was filed charging a debt of a gross amount, and not
itemized, and the answer denies the debt charged in the bill, and
the answer is sworn to by the attorney of the defendant, and the
pleadings are made up without an itemized sworn account being
embraced therein, it is not permissible to offer an *ex parte* sworn
account in evidence to establish the account, nor does such ac-
count, if sworn to in such manner, after the pleadings are at is-

sue, impose upon the defendant the duty to file a counter affidavit specifying the particular items denied.

8. DESCENT AND DISTRIBUTION. *If evidence sustains allegation that land claimed to be advancement was purchased with mother's money by father, who intended to give grantees mother's equity, it should not be treated as advancement; if land was purchased by father with his own money, and deeded to children, it will be presumed advancement, in absence of evidence to contrary.*

Where a bill charges certain land was deeded by an ancestor to some of his heirs as an advancement, and the answer denies such was an advancement, but sets forth that the land so deeded was purchased by their father with money belonging to their mother, and that in deeding the land to them it was the father's intention to give them the benefit of the mother's equity in the land, the court should hear the evidence in reference thereto, and, if the evidence sustains such contention, said land should not be treated as an advancement. If the land was purchased by the father with his own money, it will be presumed to be an advancement, in the absence of testimony to prove the contrary.

9. DESCENT AND DISTRIBUTION. *Land given by father to son as advancement should be valued for partition as of date of gift.*

In valuing land given by a father to his son as an advancement for the purpose of partition, the land should be valued as of the date of the gift when possession was taken, and not by the date of a deed made subsequent to the entering into possession.

---

*Corpus Juris-Cyc. References: Accounts and Accounting, 1CJ, p. 658, n. 61; p. 666, n. 70; Descent and Distribution, 18CJ, p. 917, n. 75; p. 922, n. 42; p. 929, n. 49, 50; p. 934, n. 99; Equity, 21CJ, p. 371, n. 95; Evidence, 22CJ, p. 862, n. 34; p. 971, n. 23; Infants, 31CJ, p. 1076, n. 45; Limitation of Actions, 37CJ, p. 698, n. 74; p. 807, n. 83; Parent and Child, 29Cyc, p. 1606, n. 86. Intent as a factor in determining whether there is an advancement, see annotation in 26 A. L. R. 1089; 1 R. C. L. 256; 1 R. C. L. Supp. 228; 4 R. C. L. Supp. 45; 5 R. C. L, Supp. 37. As to what constitutes an "advancement," see 1 R. C. L. 660; 1 R. C. L. Supp. 230; 4 R. C. L. Supp. 45. As to time of valuation of property for purposes of advancement, see annotation in 26 A. L. R. 1178; 1 R. C. L. 678; 1 R. C. L. Supp. 231; 4 R. C. L. Supp. 46; 5 R. C. L. Supp. 44; 6 R. C. L. Supp. 29.

APPEAL from chancery court of Marshall county. HON. N. R. SLEDGE, Chancellor.

Suit by Mrs. Kate M. Greene and others against C. C. Greene and others for partition, and to set apart a homestead. From an adverse decree, C. C. Greene and others appeal. Reversed and remanded.

*Lester G. Fant,* for appellants.

I. The burden of proof is on the complainants to prove every material point that is controverted. *Porter* v. *Still,* 63 Miss. 356; *Hyle* v. *Culner,* 1 How. 121; *Winn* v. *Skipworth,* 14 S. & M. 14.

II. An advancement is a provision by a parent, made to and accepted by a child, out of his estate, either in money or property, during his lifetime, over and above the obligation of the parent for maintenance and education. 18 C. J., page 911; *Garrett* v. *Calvin,* 653, 654, and 659; *Miller's Appeal,* 40 Pa. St. 57, 80 Am. Dec. 555; *Kemp* v. *Turman,* 104 Miss. 501.

III. An open account in Mississippi is barred in three years. Hemingway's Code, section 2463. The period of limitation of an account bars not only the remedy, but the very debt itself. Hemingway's Code, section 2479; *Central Trust Co.* v. *Meridian Light & Ry. Co.,* 106 Miss. 431; *Rogers* v. *Rosenstock,* 117 Miss. 144; *Trowbridge* v. *Schmidt,* 82 Miss. 475; *Cox* v. *American Co.,* 88 Miss. 88. A donor cannot convert a gift or debt into an advancement unless the donee or debtor consents thereto. 1 R. C. L., page 673; *Crosby* v. *Covington,* 24 Miss. 619; Note in L. R. A. 1918 C 619.

IV. The relation of debtor and creditor is a contractual one, involving the meeting of two minds capable of contracting. 18 C. J., pages 938 and 924.

V. A minor cannot make a valid contract. *Ferguson* v. *Bobo,* 54 Miss. 121; *Hudson* v. *Strickland,* 58 Miss. 186.

VI. The decree rendered by the special chancellor was interlocutory and subject to revision by the regular chancellor when he took charge of the case. *Sweatman* v. *Dean,* 85 Miss. 641; *Smith* v. *Slanvil,* 93 Miss. 69; *Shorter* v. *Lesser,* 98 Miss. 706; *Cox* v. *Kyle,* 75 Miss. 657; *Gallegar* v. *Martin,* 73 Miss. 695.

VII. An affidavit to an account as provided in section 1638, Hemingway's Code, has no application in a chancery suit, but is confined in its application to a suit at law. *G. & S. I. R. R. Co.* v. *Wells, Lbr. Co.,* 111 Miss. 768; *I. C. R. R. Co.* v. *Andrews,* 61 Miss. 474; *American S. Co.* v. *U. S.,* 76 Miss. 289; *Adams* v. *Fidelity Co.,* 94 Miss. 433.

VIII. Before a master or commissioner's report has the effect of a jury there must be competent evidence to support it. *Hines* v. *Naval Stores,* 101 Miss. 802.

IX. Finding of a chancellor not supported by competent evidence will be set aside. *Gillis* v. *Smith,* 114 Miss. 665; *Northern Ass'n* v. *Newman Lbr. Co.,* 105 Miss. 688.

X. An affidavit by an attorney shall have the same effect as that made by the party. Hemingway's Code, section 731.

XI. Statements made by M. A. Greene are not admissible in evidence. *Moore* v. *Parks,* 122 Miss. 332; *Sheehan* v. *Kearney,* 82 Miss. 694; 3 Wigmore on Evidence, sections 1734 and 1737; 3 Jones Commentaries on Evidence, sections 483-84; 1 Alexander on Wills, section 360-62; *Shaler* v. *Bumstead,* 99 Mass. 112-20; *Boyle* v. *Meeker,* 28 N. J. Law 283 et seq.; *Waterman* v. *Whitney* 11 N. Y. 157, 62 Am. Dec. 71; *Throckmorton* v. *Holt,* 80 U. S. 552, 45 L. Ed. 663; *Tucker* v. *Whitehead,* 59 Miss. 594; *Miller* v. *Miller,* 96 Miss. 526; *Miller's Appeal,* 80 Am. Dec. 555; *Hatch* v. *Straight,* 8 Am. Dec. 673; *Smith*

v. *Strahan*, 17 Tex. 314, 67 Am. Dec. 623; *Archer* v. *Helm*, 70 Miss. 874.

XII. Accounts cannot be debts and advancements at the same time. 18 C. J. 924, note.

XIII. The time to value advancements is the time when the child is placed in possession of the property, whether he is vested with title then or not. 1 R. C. L. 678; *Jackson* v. *Jackson*, 28 Miss. 674.

*E. M. Smith, Wall Doxey* and *E. C. Wright*, for appellees.

We submit that the ruling of the special chancellor was strictly in accord with the principles laid down by our supreme court since 1866 in cases holding that where direct proof of a claim for goods sold or services rendered or accounts kept cannot be made by the oath of the party or other witnesses, the books of account of the party are admissible. *Moody* v. *Roberts*, 41 Miss. 74; *Barner* v. *Rule*, 116 Miss. 605; *Bookout* v. *Shannon*, 59 Miss. 378; *Chicago & St. L. R. R. Co.* v. *Provine*, 6 Miss. 292.

The uncontradicted testimony of Mr. Wade was that he made up the statement filed from these books and that they showed and contained the accounts drawn off by him. Under this unchallenged testimony the chancellor very properly held that the books were competent evidence and admitted them as such, and they were used on the trial of the cause and his ruling is sustained by the highest authority. *Grenada Compress Co.* v. *Atkinson*, 94 Miss. 100; *Finley* v. *Armstrong*, 117 Miss. 298; 2 Wigmore on Evidence, section 1530, pages 1895-6-7.

One of the main questions for solution here presenting itself to the court is: Were the various charges contained on the books of the intestate after his children had finished high school and began their college courses,

and the certain tracts of land conveyed to said three sons, Dr. N. E. Greene, R. E. Greene and C. C. Greene, respectively, for a nominal consideration and love and affection, advancements to be brought into the *hotchpot* or were these said several accounts an indebtedness if not advancements which should be dealt with and considered as advancements in the distribution of the intestate's estate; or for which they should be held accountable on the final distribution; and if an indebtedness, is it a simple debt which the statute of limitations has barred, or can an heir or distributee be allowed in a court of equity in the final distribution of an estate, of which he is one of the heirs or distributees, to plead the statute of limitations to a simple debt owed by him? All the authorities are in accord in laying down the rule of differentiation between advancements, a simple debt or loan, and a gift. See 1 R. C. L., page 654; *Fellows* v. *Little,* 46 N. H. 27; *Miller's Appeal,* 31 Pa. 337.

The universal rule is that the intention of the donor and not the intention of the donee governs in all these cases. *Garrett* v. *Colvin,* 77 Miss. 408; *Kemp* v. *Thurmond,* 104 Miss. 501; 18 C. J., page 917, section 218; *Autrey* v. *Autrey,* 37 Ala. 614; *Speer* v. *Speer,* 14 N. J. Eq. 240.

In a court of equity the declared intention of the intestate will be carried out in the adjustment of the equities and claims between the parties. "Equity is equity," and it is the duty of the court to see that the purpose and the expressed intention of the intestate shall not be frustrated. *State Use & Collens* v. *Stephenson,* 12 Mo. 178.

The intention of the intestate can best be ascertained by his declarations at the time of the transaction and by his acts done and performed in pursuance of his declarations. 26 L. R. A. (N. S.) 1051. But it is charged by appellants in their answer and cross-bill that all these accounts were but gifts to them. We do submit, however,

that the burden of this proof is upon the appellants. 1 R. C. L., page 665.

Appellants say that the statement made by intestate to the witnesses, Miss Funderburke, Ames, McAuley, Osborn and others, expressing his intention of keeping these accounts on his books, are not part of the *res gestae,* and, therefore, are inadmissible. These statements were made to the said witnesses from time to time as the various assets, which they are now asked to account for, were being delivered to and received by appellants. These accounts were being made and kept at the very time, or near the time, of the statements. They are clearly admissible. The very acts and words and intention of the intestate are evidential of the issues involved. *Turpentine Co.* v. *Calamity Land Co.,* 109 Miss. 634; *Archer* v. *Helms,* 70 Miss. 74.

Appellants contend that the accounts which the appellees claim were advancements, or if not technical advancements, are an indebtedness to be accounted for by each of appellants out of their respective shares of said estate in the adjustment of the equities between the cotenants, are, or were, barred by the statute of limitations of three years, to which we reply that such defense is not applicable in cases of this character for various reasons.

(1) This is not a proceeding to collect a simple debt, *ex contractu,* as between strangers.

(2) Because while section 2479, Hemingway's Code, defeats the right as well as the remedy, it does not defeat the moral obligation in the adjustment of the equities between parties litigant where it would be against good conscience and equity to allow the same to be pleaded. 2 Story's Equity Jurisprudence, section 1521; *M'Intyre* v. *Agricultural Bank,* Freeman Chy. Rep. 111; *Howell* v. *Bush,* 54 Miss. 445.

(3) Because the parties appellant are debtor-distributees to the estate, or have in their hands assets already distributed to them to the extent of the indebtedness re-

ceived, said amounts respectively on their distributive shares in advance are to be accounted for on final distribution and should not be, and are not, allowed to retain in their hands or plead the statute of limitations thereto, while so retaining in their hands a part of the very funds out of which their own and other distributive shares are to be paid.

It is apparent that this is not a suit to collect a debt but is a partition suit in which the adjustment of the various equities and the determination of all the claims of the several co-tenants are to be settled by the court. The equities between and the determination of all the claims of the several co-tenants stated in the pleadings are the advancements real and personal and the accounts charged upon the mercantile books against the appellants. These are matters specially within the jurisdiction of the chancery court and the court was called upon to settle these various claims in this proceeding. Sections 1656 and 3525, Code of 1906; *Claughton* v. *Claughton,* 70 Miss. 384.

Again if the distributees are debtors to the estate, their indebtedness should be treated as a part of the assets and as contributing to the aggregate for distribution. *Anderson* v. *Grigg,* 44 Miss. 179; *Adams* v. *Yancy,* 105 Miss. 233. In *Hogabaum* v. *Flowers,* 67 Kan. 43, the court passed upon the effect of the statute of limitation. See also *Succession of Bongene,* 28 La. Ann. 747; *Leitman's Executors* v. *Leitman,* 149 Mo. 112; *Wilson* v. *Kelly,* 16 S. C. 217; *Garrett* v. *Pierson,* 29 Ia. 309; *Tinkham* v. *Smith,* 56 Vt. 188; *Holmes* v. *McPheeters,* 49 N. E. 452-3; *Smith* v. *Kearney,* 2 Barb. Ch. 547; *Courtney* v. *Williams,* 3 Hare Eng. Rep. 539; Waterman on Set-Off (2 Ed.), section 215; Woerner's American Law of Administration, section 564.

We have quoted the foregoing authorities taken from the various states where the question of a distributee, being required to account for debts or advancements made to him, which should be accounted for and to which the

plea of the statute of limitations was interposed showing that the great weight of authority is in favor of holding that the plea of the statute of limitaions is no defense and requiring such distributees to answer for the debt on his distributive share. The statute of limitation applies only to *actions* and this case *is not an action to collect a debt,* but simply to require the appellants to account to the estate for the amounts they have already received on their distributive shares in advance, and we respectfully submit that this should be done as one of the equities in this case.

The court is familiar with the rule that as between a gift and advancement the presumption of law is in favor of the advancement. Indeed, appellants virtually admit that they were advancements. *Sewell* v. *Everett,* 49 So. 187; *Goodwin* v. *Yowell,* 69 Ark. 629; *Holliday* v. *Winfield,* 59 Ga. 206; 1 R. C. L., section 665.

These lands, as shown by the commissioners' report, were valuable and the consideration being nominal and for love and affection and each of the said three sons should be charged up with them respectively and required to being the same into the hotchpot. *Hattersley* v. *Bissett,* 51 N. J. Eq. 597.

*Wells, Stevens & Jones,* also, for appellees.

I. *To review some of the fundamental principles underlying the doctrine of advancements,* see 1 R. C. L., paragraph 3, page 655; 18 C. J. 911; section 1388, Hemingway's Code (section 1656, Code of 1906).

Under the ruling of this court in *Jackson* v. *Jackson,* 28 Miss. 674, and *Whitley* v. *Shipman,* 38 Miss. 113, the widow is not within the statute, although under our statutes of descent and distribution she inherits in case of intestacy a child's part in the estate. The statute expressly embraces children and under the decisions of this state and other jurisdictions grandchildren taking the share of their deceased parent are comprehended within

the scope and purpose of the statute and are subject to all of the burdens of the doctrine.

II.  *The primary purpose of the doctrine is equality in the distribution of an estate.*  1 Pomeroy (4 Ed.), paragraph 405; 3 Woerner on the American Law of Administration (3 Ed.), page 1879.

In the case at bar, the bill has for its general scope and purpose a partition of all of the lands of Martin A. Greene, deceased, and the adjustment in this one proceeding of all the equities of the widow and the three sets of children. The real estate is not needed for the payment of debts although the administration has not closed. The rights of creditors are not involved. The sole issue is between the children and especially between the older set of children who have been reared in luxury and given educational and vocational training, and the minor children by the third wife.

III.  *The equities of heirs under the doctrine of advancement can be adjusted in a partition suit.*  Woerner, page 1949-50 and notes; 5 Pomeroy, paragraph 2139; *Whitley* v. *Stephenson,* 38 Miss. 113; *Adams* v. *Yancey,* 105 Miss. 233; *In Re Desforges,* 64 So. 978 (La.), 52 L. R. A. (N. S.) 689.

IV.  *Advancements are primarily a matter of intention.*  18 C. J. page 912; *Wilson* v. *Beauchamp,* 50 Miss. 24; 18 C. J. 917; *Ireland* v. *Dyer* (Ga.), 26 L. R. A. (N. S.) 1050.

Appended to this case is a note collating some cases construing gifts to sons-in-law or daughters-in-law as advancements. This shows the extent to which the doctrine has been carried. *Cazassa* v. *Cazassa,* 92 Tenn. 573, 20 L. R. A. 178, 36 A. S. R. 112. To the same effect is the Arkansas case of *Culverhouse,* 68 Ark. 405, 19 S. W. 380; *Hamilton* v. *More,* 24 Ky. L. R. 982, 70 S. W. 402.

145 Miss.—7.

Mr. Woerner says: ''As between a loan, a gift and an
advancement the presumption is in favor of an advance-
ment, because of its tendency to equalize.'' Page 188r.
Supporting this doctrine, see *Patterson Appeal,* 128 Pa.
St. 269; *Stephens* v. *Smith,* 127 Mo. Appeal 18, 100 S.
W. 533; *Poff* v. *Poff,* 218 V. 62, 104 S. E. 719.

In the case at bar, the amounts evidenced by the books
constituted either gifts outright, debts or advancements.
It cannot be denied that the older children received large
amounts after they had become of age, and, therefore,
after reaching beyond question the time when the indul-
gent father no longer owed them any duty of mainte-
nance and support. The argument, therefore, of counsel
for appellants that the father owed the minors a duty of
support and maintenance certainly does not apply to
the lengthy accounts against the adults in recent years
and certainly these accounts evidencing supplies fur-
nished the older children are not gifts in the usual and
ordinary sense of that term. They are either debts or
advancements. Counsel asserts that there can be no
such thing as a debt and an advancement. We submit,
and the authorities hold, that a father can change a debt
into an advancement and also an advancement into a gift,
if he sees fit to do so. Or, in other words, the father can
always enlarge the rights of the child. Woerner, page
1888.

The point we are stressing here is that there was tes-
timony of the most positive kind as to the intention of Mr.
Green and that his intention should govern.

The result reached by the trial court in this case is in
line with a multitude of cases and breathes the very
spirit of equity, the broad statements of impatient and
over-zealous counsel to the contrary notwithstanding.
Parol evidence is admissible to show intention of Mr.
Green both as to the deeds and as to the open accounts.
*Rockhill* v. *Spraggs,* 9 Ind. 30, 68 A. D. 607; *Powell* v.
*Powell,* 5 Dana 168; *Adams* v. *Adams,* 22 Vt. 50; *Quarles*
v. *Quarles,* 4 Mass. 680; *Meeker* v. *Meeker,* 16 Conn. 383;

*Harper,* 92 N. C. 300; *Parks* v. *Parks,* 19 Md. 323; *Finks* v. *Garrett,* 102 Iowa 381, 71 N. W. 429; *Crafton* v. *Inge,* 98 S. W. (Ky.) 325; *Palmer* v. *Culbertson,* 143 N. Y. 213, 38 N. E. 199.

There is respectable authority to the effect that when gifts or advancements of any kind are shown to have been made from parent to child, the burden of proof shifts to the child to rebut the presumption of advancements. *Succession of Weber,* 34 So. 731; *King* v. *King* (La.), 31 So. 894; *Clark* v. *Hedden* (La.), 33 So. 116; *Sewell* v. *Everett* (Fla.), 49 So. 187; *Champagne* v. *Champagne,* 51 So. 440; *Dent* v. *Foy* (Ala.), 98 So. 390; *Whitfield* v. *Whitfield,* 40 Miss. 352; *Morris* v. *Morris,* 56 Tenn. (9 Heisk.) 814; *Johnson* v. *Patterson,* 81 Tenn. (13 Lea) 626; *Autrey* v. *Autrey,* 37 Ala. 614.

Our court in *Adams* v. *Yancey, supra,* called attention to the fact that the Kansas statute is very similar to our statute in reference to advancements and we, therefore, bring to the attention of the court the very illuminating case of *Brook* v. *Latimer,* 11 L. R. A. 805, which supports practically every proposition of law relied upon by us in the case at bar. It discusses the origin and nature of advancements, the competency of oral testimony, competency of the declaration of the deceased before, at, and after the advancements are made and it is authority on the proposition that a decree on conflicting testimony should not be disturbed.

V. The statute of limitations is not available to appellants.

As to the advancements by way of real estate, certainly the plea of the three-year statute of limitations would not apply and was not intended to apply. As to the open accounts, a plea of limitation is not good if these accounts are to be treated as advancements. On principle and authority the statute of limitations is not available as a defense and does not relieve the heir from his duty to bring in the advancements into *hotchpot.* The very theory of

an advancement is that the father gives to the child a portion of his estate in anticipation. The child cannot be compelled to refund what he has received. The proceeding here is not to recover what the child has received but to compel in an equitable proceeding each child to bring what he has received into *hotchpot* in order that he may take his share of the estate upon an equal footing with the others. He has election as to whether he will return what he has received and if he is an infant, equity will act for him. 3 Woerner, pages 1881 and 1889; Woods on Limitations, 4th Ed.

As remarked by the special chancellor in his opinion, there may be some conflict in the authorities but the English doctrine from which we obtain our equity jurisprudence is clearly in favor of the proposition that an administrator has what might be termed the right of retainer of any share belonging to an heir until the heir accounts for any indebtedness due the estate whether barred by statute or not. The learned chancellor refers to the case note in L. R. A. 1918C 619; we call the attention of the court to other authorities. *Succession of Bougere,* 28 La. 743; *Tinkham* v. *Smith,* 56 Vt. 187.; *Garrett* v. *Pierson,* 29 Iowa 304.

On the proposition above mentioned that an advancement is not at all subject to the statute of limitations, see *Lietman's Executor* v. *Lietman,* 149 Mo. 112; 3 Woerner, paragraph 564; *Fiscus* v. *Fiscus,* 127 Ind. 283; *Fiscus* v. *Moore,* 121 Ind. 547; *Cherry* v. *Boultbee,* 4 Mylne & Craig 442; Waterman on Set-Off, section 110; *Ranking* v. *Bernard,* 5 Madd. Ch. 28; *Loons* v. *Mellett,* 121 Ind. 585; *Jeff's* v. *Wood,* 24 Eng. Rep. (Chancery Book 4) page 668; *Courtnay* v. *Williams,* 67 Eng. Rep. 494; *Holmes* v. *McPheters,* 49 N. E. 452; *Wilson* v. *Kelly,* 16 S. C. 216; *Holden* v. *Spier,* 65 Kan. 412, 70 Pac. 348; *In re Covin,* 20 S. C. 471.

The reasoning of the foregoing cases is perfectly sound. It is in line with the fundamental purpose of the law to equalize the father's estate among his children

and the effort of the courts to accomplish that wholesome and equitable purpose. We ask the court to follow the English cases on the subject and the declarations of the American courts expressly holding that the statute of limitations does not bar the right of the administrator to compel bringing in an indebtedness due by one of the children. If the principle applies against a legatee who, by the express provisions of the will, is made the object of the testator's bounty, then certainly it should apply against the distributee in a case of intestacy with a great deal more force and reason. The decisions are in harmony with the ruling our court in *Perkins* v. *Coleman,* 51 Miss. 298; *Adams* v. *Yancey,* 105 Miss. 233.

The recent case of *Sterling Products Co.* v. *Watkins-Gray Lbr. Co.,* 131 Miss. 145, 96 So. 313, which discusses the right of equitable set-off, is very suggestive and the principles announced support our contentions.

VI. The books were properly received as evidence of the advancements. In addition to the Mississippi decisions which are reviewed in the brief of associate counsel, see: *Van Houten* v. *Post,* 33 N. J. Eq. 344; *Nelson* v. *Nelson,* 90 Mos. 460; *Hengt's Estate,* 6 Watts (Pa.) 86; 2 Wilson's Bac. Abr. 252; Customs of London 2 and cases cited; *Hill's Guardian* v. *Hill* (Ky.), 92 S. W. 924; *Whisler* v. *Whisler,* 117 Iowa 712; *Speer* v. *Speer,* 14 N. J. Eq. 240.

On the question of admissibility of the books of account, the following Mississippi authorities clearly support the chancellor's opinion in this case: *Bookout* v. *Shannon,* 59 Miss. 378; *Moody* v. *Roberts,* 41 Miss. 74; *Chicago, etc., R. R. Co.* v. *Provine,* 61 Miss. 292; *Grenada Compress Co.* v. *Atkinson,* 94 Miss. 100, 47 So. 644; *Finley* v. *Armstrong,* 117 Miss. 298, 78 So. 177; *Barner* v. *Rule,* 116 Miss. 605, 77 So. 521.

On the question of advancements generally, the opinion and decree complained of in the case at bar are in line with the spirit of the holding and the principle announced

by our court in *Garrett* v. *Colvin*, 77 Miss. 408; *Peeler* v. *Peeler*, 11 So. 318; *Jackson* v. *Jackson*, 28 Miss. 674, 64 Am. Dec. 114; *French* v. *Davis*, 38 Miss. 167.; *Whitley* v. *Stephenson*, 38 Miss. 113; *Norfleet* v. *Callicut*, 90 Miss. 221; *Wilson* v. *Beauchamp*, 50 Miss. 24; *Adams* v. *Yancey*, 105 Miss. 233.

VII.   The decree appealed from is based on conflicting testimony and there is evidence to support it.

The finding of fact by the chancellor has the same force and effect as a verdict of a jury.   There was competent testimony to support the findings.   Even if there was a conflict of testimony, this court is not here to try the facts of the case and could not very well do so.

A few of the many authorities that the supreme court must accept the finding by the chancellor in a question of fact are:   *Oil Co.* v. *Smith*, 33 So. 443; *Carter* v. *Catchings*, 48 So. 515; *Howell* v. *Shannon*, 80 Miss. 598, 31 So. 965; *Stevens* v. *Magee*, 81 Miss. 644, 33 So. 73; *Moyse* v. *Holly*, 53 So. 402; *Derdyn* v. *Donovan*, 81 Miss. 96; *Kemp* v. *Turman*, 104 Miss. 501; *Wilson* v. *Beauchamp*, 50 Miss. 24.

We submit that the decree appealed from is interlocutory and so far as it fixed and charged advancements, was rendered upon competent testimony and the chancellor's findings should be promptly affirmed.

Argued orally by *Lester G. Fant*, for appellants, and *E. M. Smith* and *J. M. Stevens*, for appellees.

ETHRIDGE, J., delivered the opinion of the court.

M. A. Greene died intestate on March 27, 1921.   He had been married three times, and left children by each marriage.   His last wife filed suit for herself and her minor children, Kittie Bell Greene, Boyd Greene, and Alston Greene, against the children of the other marriages of the deceased, for a partition of the property,

and for the setting apart of the homestead to her. 'Certain of the children of the first two marriages had died, leaving descendants who were made defendants to the suit. The children who died since the death of their father were Dr. N. E. Greene and R. E. Greene. All of the children of the two first marriages at the death of the intestate were adults, except Miss Pollie Greene, who reached her majority a short while after the death of her father. The bill alleged that all of the children and the said wife were each entitled to one-eleventh interest in the said estate, and that all parties in interest were parties to this suit, except the two deceased children, Dr. N. E. Greene and R. E. Greene, whose descendants were made parties to the suit; that upon the death of R. E. Greene his one-eleventh interest in the said estate by his will became the property of Mrs. Annie Tyson, who by so acquiring obtained a two-elevenths interest in the said estate; that by the death of Dr. N. E. Greene his one-eleventh interest in the said estate descended to his widow, Mrs. Virginia Greene, and his minor child, Martin Greene, as his heirs, who together inherited and owned his one-eleventh interest. These parties were made parties to the suit.

The bill further alleged that the intestate had advanced certain moneys to his children, and that he kept a book account against them in his mercantile business, and charged against each of his children respectively a sum charged against them as "advancements." It is charged that the account of the advancements to each of the persons to whom advancements were made is as follows:

To C. C. Greene ........................... $12,624.87
    Mrs. Annie Martin Tyson ............. 14,141.61
    Miss Pollie Greene ..................... 4,422.68
    Mrs. L. G. Good ........................ 4,558.12
    B. B. Greene ........................... 10,349.04
    Dr. N. E. Greene ....................... 3,697.77

The bill charged that, in addition to the said advancements or indebtednesses,. shown by the mercantile books of the intestate which should be accounted for as advancements, the intestate had conveyed by way of advancements to the said three sons, R. E. Greene, C. C. Greene, and Dr. N. E. Greene, each respectively, certain tracts of land described in the bill, for a nominal consideration, and, in certain cases, for love and affection, which, likewise, should be taken into consideration, and should be brought into the hotchpot in the partition of said lands, and in the adjustment of all equities shown in the bill.

It was also alleged in the bill that the administratrix had not sufficient personal assets in her hands to equalize any inequality that was necessary in the equitable adjustment of the said advances and claims set forth in the bill; that, if the said equities arising out of the facts alleged between the parties were not adjusted in this suit, there was no other source out of which the same could be obtained.

It is further alleged in the bill that in 1921 C. C. Greene and B. B. Greene executed a mortgage on their interest in all the lands to secure a debt for a large sum of money due the administratrix for the stock of goods belonging to the estate, sold to them under an order of the court, a portion of which remains unpaid, and the mortgage is asked to be fixed as a lien on their interest in the land. The complainant, the widow, Mrs. Kate M. Greene, also asks that the "Johnson Park" property be allotted to her as a homestead.

The bill further alleges that, after the death of Mr. Greene, the adult heirs sold to one R. E. De Berry a certain lot known as "ginhouse" lot, in Holly Springs, which is asked to be relieved from the said partition and sold, the money to be held to await the judgment in this suit.

The bill prayed for the appointment of a commissioner to take and state an account of the advancements and

indebtednesses shown by the books, which should be treated as advancements including the land advancements, and that all such advancements be taken into hotchpot, as required by law, and that said lands be partitioned, and that justice, equity, and right be done so as to equalize all parties in interest; that the property known as the ''Johnson Park'' property be set aside to Mrs. Kate M. Greene, the widow of the said intestate, as her homestead; that all of said lands be partioned in kind, and a reasonable attorney's fee, etc., be charged against it, and prayed for general relief.

Appellants filed answer, making their answer a cross-bill, and admitted that the names of all the parties in interest were properly set forth in the bill; that M. A. Greene died seized of the land described in the bill; that the ''ginhouse'' lot sold to De Berry should be sold, and the proceeds thereof held to await the action of this suit for all parties in interest. They denied that any advancements were made, or that there were any accounts kept upon his mercantile books that should be treated as advancements. They denied that there were any indebtednesses due from any of the defendant heirs to the estate that should be treated as advancements, except open accounts that might be shown due from the adult defendant heirs that are not barred by the statute of limitation, which statute the answer pleaded. They also denied that there were any advancements to be considered or adjusted in this proceeding. They admitted the death of R. E. Greene, and that his interest was owned by Mrs. Annie Martin Tyson, and that on the death of said N. E. Greene his interest descended to his wife, Mrs. Virginia Greene, and child, Martin Greene. They denied that the ''Johnson Park'' property as a whole constituted the homestead at the time of the demise of the said intestate. They admitted that 'Mr. Greene, the intestate, was engaged in a large mercantile business at the time of his death, but denied that the said intestate charged any of his children any amount

as advancements, or that they were to account for anything in the final distribution of his estate shown charged against them on his mercantile books. They averred that Dr. N. E. Greene and R. E. Greene worked for their father from time to time, and received no salary therefor, and alleged that they should be credited with a reasonable amount for said service. They alleged that the accounts kept on the mercantile books of the intestate were not intended for the purpose of charging said children with any amount, but simply for the convenience of the said M. A. Greene. The appellants further averred that in the year 1916 all the amounts designated in said bill were charged off under the direction of the said intestate. They denied that any advancements in lands were made to his three sons, above named, as set out in the said bill. They admitted the execution of the deed of trust by C. C. Greene and B. B. Greene for the purchase of the goods, and admitted that the lands were capable of a division in kind, and joined in the prayer for its partition, but alleged that a part of the "Johnson Park" property was not embraced in the bill, and that it ought to be, and prayed that it be brought in and partitioned with the other property outside of the homestead proper.

The complainants answered the cross-bill, and generally denied the allegations therein.

It appears that M. A. Greene in his lifetime, in conducting his mercantile business, charged to each member of his family everything that such member got out of the store, including money for his education, clothing, and other things usually furnished a member of a family. It further appears that practically all of these accounts were credited with payments, and that there was nothing on the face of the books which showed that it was the testator's intent to treat these charges as advancements. The accounts ran for a long period of time—in some cases back to about 1901.

The testator's sons claimed that the lands deeded to them were purchased by their father with money belong-

ing to their mother, and that therefore they should not be treated as advancements; that it was merely their father's intention to give them their interest in their mother's estate; that he recognized that he was trustee by taking title to lands in his own name purchased with her money.

The regular chancellor of the district was disqualified by relationship to some of the parties, and a special chancellor was appointed to hear and determine the cause. On the 19th of October, 1923, the cause came on for hearing before the special chancellor, whereupon the complainants proceeded with their evidence to the point where they offered to introduce the books of account of the deceased, M. A. Greene, to which the appellants interposed objection, assigning as a reason that the books were not the books of original entry of the charges against the various defendants.

The widow, Mrs. Kate M. Greene, was introduced over objection, and testified to certain statements made by her husband, the intestate, during his lifetime with reference to his purpose and intention in regard to the account kept upon the mercantile books. She further testified that she had tried to get her husband in his lifetime to provide for her and her children, but that her husband never did so. The special chancellor finally held her testimony incompetent, and excluded it. Certain persons were introduced who had been bookkeepers for M. A. Greene at different times, who testified with reference to the books kept by them, saying that the books were kept in the usual course of business, but that certain of the day books and charge books made by salesmen were not found. Each of these persons testified that Mr. Greene had never spoken to them about any intention of charging these accounts as advancements, or that they were to be considered as advancements, or that they should be debts not subject to the statute of limitation.

The special chancellor at this stage continued the hearing to a later day, making this statement in reference to setting the time:

"I am not going to hear this case further at this time, but am going to continue it until an accountant can go over the books and make an itemized account of same. After this is done, I will then hear the rest of the case, and will then pass on same."

The accountants then went over the books, and made up statements from the books showing the charges against each of the children. These accounts, after being so made up were sworn to by the administratrix, the complainant in the suit.

On the 17th day of June, 1924, the special chancellor resumed hearing, and certain of the witnesses testified with reference to the books of account, and offered the lists made up. It also appeared that in the books kept there were accounts against the widow and her children, but these accounts were not made up by the accountants named by the court. At the end of this testimony the court ruled out the copies made up, and proceeded to find the amounts set out in the interlocutory decree, holding in his opinion that the complainants did not have to prove the accounts, because the answer denying the accounts were sworn to by an attorney, and not by the defendants in person.

Certain persons were introduced to testify to statements made by the intestate in his lifetime, one of whom was a dressmaker, who stated that Mr. Greene stated to her that he wanted to keep the accounts separate, charging to each one the work done for her, "as some day each tub would have to stand on its own bottom." A brother of the complainant testified to statements made by the intestate to him in which, among other things, he stated that while some of the boys were in school he was living with Mr. Greene; that he said to Mr. Greene during a conversation, in effect, that the boys were spending a good deal of money; "that they were making it pretty hot for him, weren't they?" And that he stated that he had one consolation about it—that

he was charging it up to them, and that it would come out of their estate. Similar statements were made by others.

The special chancellor held in an interlocutory decree that he did not think the charges on the books were advancements, but he held that the money received by the children would be charged up against them, and be deducted from their share of the estate in hotchpot; that the accounts were simply indebtednesses, and were not technically advancements. He held that the lands were advancements, and appointed a commission to make a partition thereof, and value them, and directed the commissioners to fix their value of the lands at the time the conveyances were made. In some cases a considerable period of time elapsed between the time the parties went into possession of the lands and the date on which the deed was made. One of the sons went into possession in 1907, and used the land from thence on, but the deed was not made until 1920. The chancellor held that the books made in the course of business were the original books of entry, and were competent as evidence, citing the case of *Grenada Cotton Compress Co.* v. *Atkinson,* 94 Miss. 93, 47 So. 644, as authority for this ruling. He excluded the accounts made up by the accountant as evidence, but held that they served the purpose of bills of particulars; that the said accounts, having been prepared by a competent accountant by copying the statements of the several accounts made from the books, served as a basis of calculation after being compared with the books, and were in evidence, and to be found in the transcript; that the correctness of these accounts was not seriously challenged as far as the items were concerned, the answer denying same not being sworn to by the respondents themselves, nor was that feature of the evidence supported by evidence or by persons in position to dispute the correctness of the accounts. The chancellor made several corrections in the account against Mrs. Tyson and against Pollie Greene on account of the erroneous charges, reducing the account of Mrs. Tyson from five thousand six

hundred seventy-three dollars and seventy-four cents to five thousand four hundred forty-four dollars and thirty-one cents, and the account of Miss Pollie Greene from five thousand eight hundred twenty-nine dollars and seventy-seven cents to four thousand eight hundred twenty-nine dollars and thirteen cents.

The chancellor held with reference to the "Johnson Park" property that it be set apart according to the use made of it by the decedent in his lifetime, and instructed the commissioners with reference to setting off the same to the widow, and appointed commissioners to make a partition and sale of the "ginhouse" lot, and to find the value of the lands conveyed to the sons, R. E., N. E., and C. C. Greene, as advancements, and directed that the homestead be set apart, and to value the several separate tracts of land, and report back to the court.

After this interlocutory decree, a new chancellor was elected and qualified, and the case came on for further hearing before him. The defendants filed an exception to the report, and offered proof to show that the possession of certain lands was awarded to the sons before the deeds were made to them; offered to prove that the value at the time they were into possession was much less than the value at the time some of the deeds were made. They also offered proof to show that the lands treated as advancements by the special chancellor were bought with funds belonging to their mother, and hence did not constitute subjects of advancement against the estate of the father. They also sought to review the findings of the special chancellor on the interlocutory decree, and to challenge the accounts, and to show that the complainant, Mrs. Kate M. Greene, had received certain rents from the "Johnson Park" property and the value thereof, and sought to contest liability on those accounts for periods of minority; in other words, the appellants, on the coming in of the commissioners' report, undertook to have the regular chancellor review the case as dealt with by the special chancellor, and hear additional evi-

dence in reference thereto. The regular chancellor, who had been elected and qualified, refused to review the proceedings before the special chancellor, stating that he would treat that decree as a final judgment, and he refused to hear evidence on the subjects as tendered by the defendants.

We think the chancellor was correct in finding that the accounts were not advancements within the meaning of the law upon that subject. In 1 R. C. L. 660, par. 10, it is said:

"The definition of advancement embraces the idea that the donor has irrevocably parted with his title in the subject-matter, and that complete title has passed to and become vested in the donee. And it is necessary to the existence of an advancement that the passing of the complete title and the vesting of the beneficial interest shall take place during the lifetime of the donor, as the purpose of an advancement is to allow the heir or distributee the present use and enjoyment of that which under other circumstances he would not secure until the donor's death. Hence, where no estate that can be alienated is given to a donee, no advancement can be said to have been made."

See, also, 18 C. J. 929, section 246.

The book accounts therefor were not dealt with by the intestate as advancements, but payments on the debts shown by the books were received and credited. In other words, the intestate treated the accounts as any other debt charged upon the books, and dealt with it as such.

The several statements made by the witnesses who testified to conversations with the intestate in his lifetime merely show that he intended to make some disposition or final adjustment between his children. These payments in some instances amounted to large sums of money relatively speaking. As we understand, there is no proof of any of these conversations being so directly connected with any particular advancement as to make it a part of the *res gestae*. And these statements were

not chosen to have been made in the presence of the respective children against whom the accounts were charged, or that the intention of the father ever was communicated to the respective children. Of course, if the intention existed to make them advancements, and that was clearly proven, it would be controlling, because a parent has the right to charge up money or property advanced to his child, at least for any purpose other than that which the law imposes a duty upon him to furnish it.

In *Garrett* v. *Colvin*, 77 Mis. 408, 26 So. 963, it is said:

"It is the duty of a father to give his son an elementary education, and generally expenses incurred by the father for a university education would not be held as advancements, but we see no reason why a gift of money from a father to his child, to enable him to take a university education, whether in law, medicine, theology, or in the arts and sciences, should not constitute an advancement, *if distinctly intended so to be at the time of the gift.*" (Italics supplied.)

In reference to the holding of the chancellor that the accounts should be charged against each one of the children as debts, we think his ruling is error in so far as it dealt with things furnished the child during the minority of the child. In order to be a debt it must be a contract, and a child under twenty-one years of age is incapable of contracting, except for necessaries, and it is the duty of a father to furnish the necessaries for his child, and he cannot charge the child up with necessaries which it is his duty to furnish.

It was also error for the chancellor to hold that these accounts should be charged against the several children against whom they were charged, where they were more than three years old at the date of the death of M. A. Greene. All open accounts more than three years old at said time were barred by section 2479, Hemingway's Code (Code 1906, section 3115), which reads as follows:

"The completion of the period of limitation herein prescribed to bar any action, shall defeat and extinguish

the right as well as the remedy; but the former legal obligation shall be a sufficient consideration to uphold a new promise based thereon."

At common law, and under the statutes of most states, the statute of limitation does not extinguish the debt, but merely bars the remedy by which the debt may be collected or enforced. When such is the case, the debt continues to exist, and may be charged against the child in the division of an estate; but, where the debt itself is extinguished by the statute of limitation, as it is in our state, the account ceases to be a debt. It is completely extinguished by the statute of limitation, and can only serve as a legal consideration for a new promise based thereon. *Proctor* v. *Hart,* 72 Miss. 288, 16 So. 595; *Trowbridge* v. *Schmidt,* 82 Miss. 475, 34 So. 84; *Cox* v. *American Freehold & Land Mortgage Co. of London,* 88 Miss. 88, 40 So 739; *Central Trust Co.* v. *Meridian Light & R. Co.,* 106 Miss. 431, 63 So. 575, 51 L. R. A. (N. S.) 151; *Rogers* v. *Rosenstock,* 117 Miss. 144, 77 So. 958.

In reference to the accounts which are not barred by the statute of limitation, we are of the opinion that the testimony that the books were made up in the regular course of business and were correctly kept renders them admissible in evidence. They may be sufficient, in the absence of counter proof, to sustain the finding that the parties charged therewith owed the said amounts. We think that the chancellor was in error in holding that the complainants were not put to proof by the denial of the answer being sworn to by an attorney. Section 731, Hemingway's Code (section 1011, Code of 1906), provides:

"In all cases where the oath or affirmation of the party is required, such oath or affirmation may be made by his agent or attorney, and shall be as effectual for all purposes as if made by the party."

This section has the effect of making a denial sworn to by an attorney impose the burden to prove the matter upon the complainant.

We do not think the affidavit to the account made by the administratrix after the pleadings were made up has any efficacy in putting the defendant to a denial of the several items under the oath. The bill was not based upon an itemized open account duly sworn to as provided by section 1638, Hemingway's Code (section 1978, Code of 1906). This section was intended to be used in connection with the pleadings in making up the issues. After the pleadings are properly at issue, the proof must be produced in the regular way by the production and examination of the witnesses. This section was not intended for the purpose for which it is attempted to be used in the present suit. It was not intended to enable a person incompetent to testify to accomplish the same result by swearing to an open account itemized *ex parte.* Where the account is a part of the pleadings, and is verified in the manner provided by the statute, the statute compels the other party to particularize in his denial of what is and what is not correct; but it is not intended that either party by an affidavit subsequently filed as a part of the evidence can get the benefit of it.

In reference to the land deeded by the intestate to the three sons above mentioned, we think the regular chancellor should have heard the evidence with reference to the purchase of this property with the money of the first wife of the intestate, who was the mother of the three sons involved. If in fact he purchased these lands with their mother's money, and intended when he gave the lands to recognize his obligation to her children, the lands should not be held to be advancements. If they were not so purchased, and if they were intended as advancements, as the law presumed they were in the absence of proof to the contrary, the value should have been fixed as of the date when the gift was made and possession taken.

In 1 R. C. L. 678, under the heading "Time of Valuation," it is said:

"It is a rule of almost universal application that an advancement is to be valued as of the date when the estate or interest passed to the donee, or as the rule is often expressed, as of the date when the donee took possession and entered into the enjoyment of the gift. It matters not whether, at the time the donee thus actually took possession and entered into the enjoyment of the advanced property, he held the legal title thereto, provided he thereafter acquired such title. Thus the value of land advanced is to be determined as of the date of taking possession, although the advancement was made in parol and the deed to the land was not delivered until after possession was acquired."

In *Jackson* v. *Jackson*, 28 Miss. 674, 64 Am. Dec. 114, this court said:

"Its value must be estimated as at the time when the gift was made."

The chancellor was, therefore, in error in having the land value as of the dates of the deeds rather than of the dates possession was taken. There might, in fact, never be a deed, but title might ripen by adverse possession. For the purpose of advancement, it is to be treated as though the deed was made when possession was given with the declaration or agreement of gift.

We think the decree of the chancellor was proper in reference to the homestead, and that the commissioners should set aside the homestead according to the manner it was treated by the intestate in his lifetime. We think it proper to reverse the case generally and remand it for the purpose of conforming to the opinion herein rendered.

*Reversed and remanded.*