GRENADA COTTON COMPRESS COMPANY v. WILLIAM ATKINSON.

## [47 South. 644.]

1. EVIDENCE. *Books showing business transactions.*

An entry made in a book used for that purpose by one person in the regular course of business, recording an oral or written report made to him by another in the regular course of business, of a transaction lying in the personal knowledge of the latter, is admissible in evidence, where the practical inconvenience of producing on the stand the numerous persons concerned would, in the particular case, outweigh the probable utility of so doing.

2. WAREHOUSEMEN. *Injury to goods. Limitation of liability. Adjustment before removal of property. Waiver of provision.*

Where the dealings between warehousemen and the owners of cotton stored with them showed that the parties had disregarded a provision in the warehouse receipts that all claims for damages against the warehousemen should be adjudicated before the cotton was removed, the provision could not be set up as a defense by the warehousemen in an action for damages brought after the removal of the cotton.

3. SAME. *Receipts. Construction. Fire and water exception.*

A clause in a warehouse receipt exempting the warehousemen from liability for loss by fire and water did not cover damage from exposure to the ordinary action of the elements, but related to damages from some disaster produced by fire or flood in the nature of an overwhelming catastrophe.

4. SAME. *Damage to goods. Action for. Evidence.*

In an action for damages to certain lots of cotton, described in a bill of particulars, while stored in defendant's warehouse, each bale of which was evidenced by a separate compress receipt, testimony showing the damage to all the cotton, and identifying the damaged bales as the identical cotton delivered to defendant and described in the bill of particulars, and that the damage resulted through defendant's negligent handling of the same, was sufficient, and it was not necessary to prove the particular damage to each separate bale.

FROM the circuit court of Madison county.

HON. WILEY H. POTTER, Judge.

Atkinson, appellant, was plaintiff in the court below, the Cotton Compress Company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The appellant did a cotton warehouse business in Canton, Miss., and for each bale of cotton delivered to it for storage issued a separate receipt in the following form, with the blanks properly filled out:

"Granada Cotton Compress Company.

"Canton, Miss.,——, 1905.   No. 34,108.

"Received of —— one bale of cotton in apparent good order.

| Mark. | No. | Weight. | Remarks. |
| --- | --- | --- | --- |

"All claims of any kind hereunder must be adjudicated before the property leaves our possession. Not responsible for loss or damage by fire or water. This bale of cotton to be delivered only on return of this receipt properly indorsed.

"————, Manager."

The appellee was a cotton merchant in New Orleans, La., and

did business in Canton, Miss., where he had an agent, one Dow, and appellee through Dow bought large quantities of cotton from different owners having cotton stored with the appellant, who delivered to Dow the warehouse receipts representing the cotton and these deliveries were in fact considered as the delivery of the cotton, since the appellant recognized the holders of the receipts as the owners of the cotton covered by same and bearing the corresponding numbers and marks.   The cotton of the appellee was shown to have been in good condition when delivered to the compress company.   A large quantity of the cotton so delivered to appellant was by it placed on the ground in an open field, without protection from the rain or from water standing on the premises. The season was a wet one, and afterwards, when this cotton was shipped to appellee in New Orleans, at the request of Dow, it was found to have been damaged by water.

Upon the receipt of the cotton in New Orleans, it was delivered to a public weigher, one Crawford, who weighed and inspected the cotton, and kept books in which he entered the grade mark, weight and condition of each bale of cotton.   If the cotton slightly damaged, it was "scale picked;" that is, the damaged cotton was picked off at the scales under his supervision, so as to put the bale in merchantable condition.   The bale was then reweighed, and a record made of the loss in weight.   When the bale was found to be so badly damaged that it could not be put into merchantable condition by "scale picking," Crawford ordered it sent to a cotton pickery; each bale sent to the pickery being accompanied by the grade mark and weight of the bale, and a memorandum given to the driver of the dray from the pickery, which was handed to the foreman of the pickery, one Steeg.   Upon receipt of the cotton at the pickery, Steeg entered in books kept by him the tag number, original weight, and grade mark.   The bale was then picked under his supervision, so as to put it in merchantable condition.   He then reweighed the bale and entered the reweight in his books.   The pickings was then paid for by the pickery at the regular market price.   The

cotton was then sold by appellee according to these reweights at the regular market price.  The sum sued for in this case was the value of cotton lost on each particular lot of cotton at the prevalent market price, giving credit for the value of the pickings.

On the trial the court admitted the books of each witness to be used in connection with the testimony of Crawford, the cotton weigher, Steeg, the pickery foreman, Dow, appellee's agent at Canton, L. S. Atkinson, the general manager for appellee, and the books of the appellant compress company, produced and identified by its agent at Canton, Hester.  All of the books introduced as evidence, from which the above witnesses testified, were objected to by the defendant below on the ground that they had not been legally authenticated, since it appeared that the witnesses did not make all of the entries in the books from which they testified, and did not have personal knowledge of the matters about which their testimony was given, but relied upon the books for facts.  Appellee offered proof showing that the books were correctly kept, were frequently audited and balanced during the course of business, that all entries made in them were made at the time the various transactions occurred, and were made by the parties having knowledge of such transactions.

Other questions were presented:  First, as to the right of the appellee to recover, because the claim was first made after the cotton had left the compress, in violation of the terms of the receipt; second, because the compress company did not assume liability for damages by water according to the terms of the receipt; and third, because damage to each particular bale was not proved, it being shown only that certain lots of cotton were damaged.

*W. C. McLean,* for appellant.

Under the principles laid down in *Chicago, etc. R. Co. v. Provine,* 61 Miss. 288, and reaffirmed in *Illinois, etc., R. Co. v. Gross,* 22 South. 946, the plaintiff signally failed to make out his case.  The evidence shows that only one bale at a time was

delivered, and that for each separate bale a separate and distinct compress company's receipt ticket was issued; and there is nothing to show the loss on any one particular bale.    It is a clear proposition that the delivery of each bale of cotton to the compress company was a separate and independent contract; and accordingly it must follow, as held in the *Provine case, supra,* that before plaintiff can legally recover he must show the breach of that specific contract.    The only way whereby the breach of any particular contract can be shown is by identification of the particular bale of cotton with reference to which the breach occurred; and the amount and character of damage to such bale must be clearly shown.    As plaintiff has recovered on claim of damage to a large number of bales viewed in the aggregate, and has failed to show the extent of damage to each different bale, the judgment of the court below should be reversed and the cause be remanded.

*W. H. Powell, Huber & Powell,* on the same side.

But for the different books of account shown in evidence, and from which different witnesses for appellee testified, appellee's case must fall to the ground.    It will be noted that none of the witnesses had any recollection, independent of the books, of the matters about which they testified tending to establish the identity of the cotton, its value, quality, or damage and time of damage thereto.    The books were not properly authenticated and all of the witnesses did not make the entries in the books from which they testified.    Their testimony was accordingly incompetent.    *Chicago, etc. R. Co. v. Provine,* 61 Miss. 288; *Moody v. Roberts,* 41 Miss. 77.

In order to sustain a judgment in his favor the appellee should have proved every identical bale damaged and the amount of damage to each bale after the compress company received the cotton and before it lost possession of it.    A claim for general shortage or damage to a whole consignment of cotton consisting of many bales is not recoverable.    *Chicago, etc. R. Co. v. Provine, supra.*

The appellee is precluded from recovery because of the provisions in the compress company's receipts that all claims for damages must be adjudicated before the cotton leaves the compress company's possession. Such a provision is reasonable. *Hunnicutt v. Express Co.,* 54 Miss. 566; *Libbey's case,* 33 L. Ed. (U. S.) 818.

A public corporation cannot by previous contract exempt itself from its own negligence, but a private corporation, such as is appellant, may do so. Therefore the provision in the contract of bailment that appellant should not be responsible for damages from fire and water can be invoked in its defense. The damages to the cotton, if any, were caused by water; and, even if appellant caused the damage, it cannot be held liable because of the exemption as to this under the contract.

*Pratt & Reid,* for appellee.

The books of account of the weigher and picker were properly admitted in evidence. If we take as our guide the rule laid down in *Moody v. Roberts,* 41 Miss. 74, to the effect that it must appear that the books "are the regular books of account of the party, containing the original entries of his transactions from day to day in the regular course of his business and made at or about the time of the transactions noted and sought to be proved, and that they are fairly and honestly kept," then it must follow that the court below did not err in admitting the books in evidence. The books were shown in evidence to be of original entry. The method of verifying the books was clearly and competently shown. The original bills of lading of the railroad company in evidence tallied with the entries in so far as they went. No question of the corectness of the books was ever raised. The book-keeper who kept appellee's books, that is to say, who actually indited the entries in ink in the books, was beyond the jurisdiction of this state, being a resident of Louisiana, and could not be gotten as a witness; but appellee testified that he habitually made examination of the books from time to time, and himself knew they were correctly kept. Appellee's agent,

Dow, at Canton, proved the authenticity of the books kept in Canton and shown in evidence.   Under the *Provine case* cited by opposing counsel, the books were completely authenticated. See also *Murray v. Pepper,* 42 South. 1031, 17 Cyc. 386; Wigmore on Evidence, § 1530; *Louisville, etc., R. Co. v. Daniel,* 91 S. W. 691; *Insurance Co. Railway Co.* (N. C.), 50 S. E. 452; *Hichner v. Railway Co.,* 158 Fed. 1011; *Corkran v. Rutter* (N. J.), 69 Atl. 954.

The impossibility of any person remembering from independent recollection the details of all the transactions noted in the books is apparent.   The bookkeeper who wrote the entries in the books of account had no knowledge of the facts transcribed. The messengers who brought the manifests and bills of ladings from the railroad company to appellee's agents, knew nothing of the facts written therein.   A rule of law such as appellant seeks here to invoke would make it absolutely impossible for any one conducting a business of any magnitude to prove up his books to meet the technical demands of the opposing party. It would have been idle for appellee to have brought his bookkeepers from Louisiana, inasmuch as, even if they were present at the trial, they could have had no knowledge of the transactions represented by the items in the books kept by them.   Under the circumstances this court will not reverse because of the admission of the books in evidence.   *Continental National Bank v. First National Bank,* 108 Tenn. 374, 68 S. W. 497; *Lumber Co. v. Johnson,* 98 S. W. 207; *Dam, etc. Co. v. Allen,* 66 Atl. 537.

Even conceding for the sake of discussion that the compress tickets issued by appellant for every bale of cotton constituted separate contracts binding upon the bailor, the provisions, "all claims of any kind hereunder must be adjudicated before the property leaves our possession" and "not responsible for loss or damage by fire or water," can avail the appellant nothing in this case.   Each of these quoted stipulations is an attempt by appellant to contract against its own negligence.   28 Am. & Eng.

Ency. of Law (2d ed.) 636.    But appellant cannot set up such defense in this case, because the evidence shows that the past course of dealings of appellant negatives the idea that such provisions should be relied on for defense in case of damage to bales of cotton in its possession.

FLETCHER, J., delivered the opinion of the court.

One of the numerous questions presented by this record is the competency of the books introduced in evidence.    It is earnestly argued that these books are not shown to be competent within the principles of *Chicago, etc. R. Co. v. Provine,* 61 Miss. 288, and other familiar authorities.    Considering the showing made as to the manner in which the books were kept, the sources of information relied on by the persons who made the entries, the due and regular course of business to which the entries relate, the methods by which the entries were verified, and the proof as to their correctness as shown by subsequent developments, we think it is not necessary to qualify in any respect the rule laid down in the *Provine case,* in order to hold the books competent in this particular case.

We give our approval to the admirable statement of the modern rule contained in Wigmore on Evidence, § 1530.    It is there said:    "The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so.    Why should not this conclusion be accepted by the courts?    Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life.    They are the ultimate basis of calculation, investment, and general confidence in every business enterprise;

nor does the practical impossibility of obtaining constantly and permanently the verification of every employe affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognize as safe should be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who, as attorneys, have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." Considering this exact statement of the rule as supplementing what has been said by this court on the subject, we have no difficulty in approving the action of the court below in admitting the books in evidence.

Due consideration has been given to the contention on the part of appellant that the plaintiff is precluded from recovering in this action on account of the provisions in the compress receipts that all claims for damages must be adjudicated before the cotton leaves the possession of the compress company. Such a provision, while manifestly reasonable and enforceable in some cases, cannot be upheld on the facts of this case. It is clear that the course of dealing between the parties negatives the idea that this clause can be set up as a defense. In the absence of opportunity to make a careful examination, considering the fact that the cotton could not be withheld from the market for an indefinite period while the slow process of adjudication was being completed and the further fact that the compress company itself, as shown by the declaration of its manager, attached little or no importance to the provision, we are constrained to uphold the rullings of the circuit court on this point.

We deem it unnecessary to decide whether a compress com-

pany, receiving and storing cotton for safe-keeping, compression, and shipment, can contract against the consequences of its own negligence. Upon the point made as to the clause in the compress receipt exempting the company from liability for loss by fire and water, we think that this has no reference to damage resulting from exposure to the ordinary action of the elements. The exemption from liability relates to damage resulting from some disaster produced by fire or flood, in the nature of an overwhelming catastrophe. It was, manifestly, not within the contemplation of the parties that the bailee should, by virtue of this clause, be licensed to expose the cotton to the weather and thus produce the damage which ordinary care should have avoided.

It is said that the action must fail because each bale of cotton stored with the company is evidenced by a separate compress receipt, and that it therefore became the duty of the plaintiff to prove the particular damage to each particular bale so receipted for, and that proof of general damage to the cotton in controversy is not sufficient. To support this contention reliance is placed upon the cases of the *Chicago, etc., R. Co. v. Provine,* supra, and *Illinois, etc., R. Co. v. Gross* (Miss.) 22 South. 946. These cases are not in point. They are actions against carriers for a failure to deliver cotton shipped over their lines. The instant case is a suit for damages to certain lots of cotton, set out in the bill of particulars, and the proof was sufficient to convince the jury that damage had resulted to this cotton through negligent handling of the same by the defendant company. It should be borne in mind that, while each bale of cotton damaged was not identified by reference to its own particular compress receipt, yet it was shown what the damage was to all the cotton, bale by bale, and that the bales so damaged were identified by marks and otherwise as being the identical cotton delivered to the compress company and described in the bill of particulars. We think this is sufficient.

We do not review the instructions given and refused, since they relate to the questions already considered and others which

we think are without merit.   The jury was well warranted in believing that the damage resulted from the negligent conduct of the defendant; and, since the correct result has been reached along lines of substantial accuracy, we think the judgment should be, and it is hereby,                                   *Affirmed.*