241 So.2d 148 (1970)
Lea SPEARS
v.
STATE of Mississippi.
No. 45961.
Supreme Court of Mississippi.
November 9, 1970.
Roland C. Lewis, Jackson, W.M. Conerly, Vicksburg, for appellant.
A.F. Summer, Atty. Gen. by Velia Ann Mayer, Special Asst. Atty. Gen., Jackson, for appellee.
*149 PATTERSON, Justice:
Mississippi Constitution, Article 3, Bill of Rights, section 26 (1890) provides in part as follows:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; * * * (Emphasis added.)
The appellant was tried and convicted of the crime of abortion in the Circuit Court of Warren County. One of the essentials of the crime is pregnancy.
During the course of the trial two doctors introduced as witnesses for the State were permitted to testify that the State's prosecuting witness was pregnant. One of the doctors stated that his opinion of pregnancy was based solely upon the laboratory report of his technician; that he had not examined the State witness. The other doctor also testified from a laboratory report made by a laboratory technician though he had on one occasion, in an emergency situation subsequent to the alleged abortion, personally examined the State witness.
The laboratory technicians were not offered as witnesses. The doctors' testimony, though sworn, was merely a reiteration of that which had been related to them by unsworn witnesses. This was hearsay evidence [Dennis v. Prisock, 221 So.2d 706 (Miss. 1969); Hill v. Stewart, 209 So.2d 809 (Miss. 1968); City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965); and Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965)] which denied the defendant the basic and fundamental right to be confronted by the witnesses against her as well as the right of cross-examination. This was error of major proportion, requiring the case to be reversed and prompting the statement that it is more the duty of the State's prosecutor to safeguard the constitutional rights of a defendant than to seek conviction without them.
We find no merit in the other assignments of error.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, JONES, BRADY, INZER and SMITH, JJ., concur.
ROBERTSON, J., and GILLESPIE, P.J., dissent.
ROBERTSON, Justice (dissenting):
I respectfully dissent. If admitting the testimony of Dr. William P. Featherston, *150 an acknowledged expert and specialist in the field of pathology, and also a co-owner of the Bratley-Featherston Medical Laboratory, was error, then in my opinion it was harmless error.
The State's prosecution witness was a nineteen-year old young lady. It was she who became pregnant and it was she on whom the abortion was performed. She was the accuser. The defendant was confronted with her accuser and the accuser was subjected to a grueling and rather cruel cross-examination.
The accuser testified in detail as to how she knew she was pregnant. There was no doubt in her mind that she was pregnant, and there was no doubt in the mind of the defendant who performed the abortion and was paid $150.00 cash for performing it.
The testimony of Dr. William P. Featherston and Dr. Calvin Hull was pure surplusage. Pregnancy had already been proved by the testimony of the victim herself. The State's evidence, exclusive of the doctors' testimony, met the burden on the question of pregnancy. The defense of the appellant was that she did not know, had not seen, and had nothing whatsoever to do with the prosecuting witness. The defense was not based in any way on whether or not the prosecuting witness was pregnant.
I would call attention to the fact that Dr. Featherston had at the trial his official office file specifically labeled with the name of the prosecution witness alone. He referred to it in his testimony and never did appellant ask to see the file and its contents. Dr. Featherston testified that the pregnancy test was made in his office, by a trusted employee, under his supervision and control.
Ordinarily, Bratley-Featherston Medical Laboratory never sees the patients. Specimens and samples are forwarded to them from all over the state by the patient's own doctor, and the written report is sent to that doctor. It just so happened in this case that the patient went directly to the Medical Laboratory.
With reference to official business records this Court as far back as 1908 in the case of Grenada Cotton Compress Company v. Atkinson, 94 Miss. 93, 47 So. 644 (1908), had this to say:
"We, desire, however, to give our approval to the admirable statement of the modern rule contained in Wigmore on Evidence, § 1530. It is there said: `The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognize as safe should be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who, as attorneys, have already employed and relied upon the same methods. In short, *151 courts must here cease to be pedantic and endeavor to be practical." 94 Miss. at 100-101, 47 So. at 646.
In holding that hospital records were properly admitted into evidence in the case of City of Bay St. Louis v. Johnston, 222 So.2d 841 (Miss., 1969), we quoted with approval from 6 Wigmore, Evidence (3rd ed. 1940) § 1707, p. 36, the following:
"The medical records of patients at a hospital, organized on the usual modern plan, deserve to be placed under the present principle. They should be admissible, either on identification of the original by the keeper, or on offer of a certified or sworn copy. There is a Necessity (ante, § 1421); the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness (ante § 1422); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. * * *" 222 So.2d at 844.
We very plainly state in Rule 11, Rules of the Supreme Court of Mississippi:
"No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." (Emphasis added).
Inferentially this Rule is stating that trial judges have wide latitude in the admission or exclusion of evidence, and this is as it should be. They are there on the ground, and can observe the jury in the box and the witness on the stand.
Rather than it affirmatively appearing from the whole record that the judgment has resulted in a miscarriage of justice, it very clearly appears from the whole record in this case that the decision of the jury and the trial judge was just and correct and about the only decision that a jury of reasonable people could reach.
I would have affirmed the judgment of the jury and the trial court under our harmless error rule.
GILLESPIE, P.J., joins in this dissent.