Lea SPEARS, Petitioner-Appellant,

v.

CIRCUIT COURT, NINTH JUDICIAL DISTRICT, WARREN COUNTY, STATE OF MISSISSIPPI, Respondent-Appellee.

No. 74–3762.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1975.

Roland C. Lewis (Court-appointed), Jackson, Miss., for petitioner-appellant.

Timmie Hancock, Sp. Asst. Atty. Gen., Jackson, Miss., for respondent-appellee.

Before BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

The instant appeal, the latest installment in the legal saga of the appellant, Lea Spears, is from the denial of her petition for the writ of habeas corpus. 28 U.S.C. § 2241 et seq. This litigation has a prodigious history beginning in 1969 when Spears was convicted in the Circuit Court of Warren County, Mississippi, of performing an abortion in violation of § 2223 Miss.Code 1942 (Supp. 1966) [now codified as § 97–3–3 Miss. Code 1972]. She was sentenced to a term of 10 years but the Supreme Court of Mississippi reversed her conviction, Spears v. State, 241 So.2d 148 (Miss.1970) (two Justices dissenting), because Spears was not confronted by the laboratory technician whose report furnished the basis for certain testimony as to the pregnancy of a prosecuting witness. A new trial ensued, Spears was reconvicted, and the conviction was affirmed without opinion. Spears v. State, 257 So.2d 876 (Miss.1972), cert. denied, 409 U.S. 1106, 93 S.Ct. 893, 34 L.Ed.2d 686 (1973). She was sentenced to a five year term and is presently confined in the Mississippi State Penitentiary. During the pendency of her second appeal a three judge federal court was convened in order to consider Spears' contention

that the Mississippi abortion statute under which she was convicted was unconstitutional. In July 1974 the three judge panel held the statute valid "in every respect insofar as the plaintiff is concerned; . . . she is being punished by the State within the limits of the statute." Spears v. Ellis, 386 F.Supp. 653, 655 (S.D.Miss.1974). A petition for rehearing was denied on February 25, 1975. The Supreme Court of Mississippi had previously reached a similar result in a unanimous and well reasoned opinion denying an application for leave to file a petition for writ of error coram nobis. Spears v. State, 278 So.2d 443 (Miss. 1973). In 1973 Spears filed her petition for writ of habeas corpus and in June 1974 the United States District Court, without conducting a hearing, denied the petition.[1] This appeal followed and we affirm.

A brief summary of the facts is necessary in order to facilitate a discussion of the contentions Spears raises in this court. In 1969 Cynthia Ivey, a prosecuting witness, thought she was pregnant and went to the Bratley Clinic in Jackson, Mississippi, to obtain a pregnancy test. She was met by a receptionist who directed her to collect a urine specimen. The specimen was left with a nurse at the clinic and the receptionist was requested by Miss Ivey to relay the test results to Dr. Calvin Hull of the University of Mississippi Medical Center. The pregnancy test, conducted by a Bratley laboratory technician, was positive and Cynthia Ivey decided to obtain an abortion. With the assistance of her roommate, Glenda Jordan, another prosecuting witness, Miss Ivey made an appointment with Spears. The abortion procedure was performed. Subsequent to the procedure she developed a severe infection which necessitated a complete hysterectomy. Lea Spears was indicted in 1969 by a Warren County grand jury for the crime of abortion. The indictment read in part:

> The grand jurors . . . present that Lea Spears . . . did . . cause one, Cynthia Azlene Ivey, a woman pregnant with child to abort . . . which said abortion or miscarriage *was not done* by or on the advice of a physician, as *being necessary for the preservation of the life of the said Cynthia Azlene Ivey,* and the pregnancy of the said Cynthia Azlene Ivey *not being caused by rape,* contrary to the statute in such cases. . . . (emphasis added)

The Mississippi statute on which the indictment was based, section 2223 Miss. Code 1942 (Supp.1966), presently codified as section 97–3–3 Miss.Code 1972, provides in part as follows:

(1) Any person wilfully and knowingly causing, by means of any instrument . . . any woman pregnant with child to abort or miscarry, or attempts to procure or produce an abortion or miscarriage shall be guilty of a felony unless the same were done by a duly licensed, practicing physician:

> (a) where necessary for the preservation of the mother's life;

> (b) where pregnancy was caused by rape.

\* \* \* \* \* \*

Petitioner also contends that the state trial court erred in admitting the laboratory record and testimony of the laboratory technician; and that the state trial court erred in excluding testimony concerning whether one of the witnesses was or would be charged with a crime. . . . In this Court's opinion, neither of the evidentiary issues presented by the petitioner rise to a constitutional level within the meaning of 28 U.S.C. 2241(c)(3).

---

1. The order of the district court reads in part:

All state remedies have been exhausted by petitioner. This Court has a complete transcript of the proceedings that resulted in petitioner's conviction and in her having been taken into custody. An evidentiary hearing is not necessary to resolve the issues raised by petitioner.

While a portion of the Mississippi abortion statute has been held unconstitutional [*Spears v. State,* 278 So.2d 443 (Miss.1973)] the remaining portion still makes it a crime for a non-physician to perform an abortion on another.

Spears asserts on this appeal that the decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), render the Mississippi abortion statute unconstitutional and her conviction void. In a related contention, she argues that her indictment and the jury instructions prejudicially tracked unconstitutional portions of the abortion statute. She also contends that her sixth amendment right to confrontation was abrogated by the prosecution's failure to produce all of the Bratley laboratory employees who participated in obtaining, labeling, and testing the urine specimen. In addition to these contentions, which we consider to be the most substantive ones, Spears argues that she was denied due process by the state's alleged failure to reveal to the jury any arrangement between the prosecuting attorney and the prosecuting witnesses in return for their testimony against her, and by the court's curtailment of cross-examination on this point. She further alleges, rather ingeniously, that she was authorized to perform the procedure for which she was convicted by virtue of § 73–25–35 Miss.Code (1972) which provides, "Females engaged in the practice of midwifery are not prohibited from such practice, but are entitled to engage therein without a license." We shall consider these contentions sequentially.

*The Mississippi Abortion Statute: Section 2223 Miss.Code 1942 (Supp. 1966) Presently Codified as Section 97–3–3 Miss.Code 1972*

Initially we reiterate that two courts, in addition to the court below, have considered the constitutionality of this abortion statute. Both courts considered the opinions of the Supreme Court in Roe v. Wade and Doe v. Bolton, *supra*. The Mississippi Supreme Court held section 1 of the statute constitutional except for subsections (a) and (b), while not commenting on the rest of the statute, finding it unnecessary to do so in considering Spears' argument.

Petitioner's conviction was based on Section 1 which prohibits all abortions unless performed by a duly licensed, practicing physician and since petitioner was not a physician the abortion performed by her was a violation of Section 2223 Mississippi Code 1942 Annotated (Supp. 1966). Spears v. State, 278 So.2d 443, 446 (Miss.1973).

The three judge federal court in considering Spears' attack on the constitutionality of the abortion statute also held section 1 valid.

There is nothing overbroad, or vague, or indefinite about this Section 1 of this Act. The other part of the statute simply has no application to the facts in this case. There is nothing vague or indefinite about the term "physician". That is a commonly used and well known and accepted term which refers to a doctor of medicine who is practicing and licensed as such in Mississippi.

The vagueness doctrine as argument is laid to rest by the United States Supreme Court in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 1299, 28 L.Ed.2d 601. This statute of Mississippi irrefragably imparted a sufficient caveat or warning to Lea Spears that her actions were violative of State law.

The State of Mississippi has an impelling right and a pressing need for the enactment of such an abortion statute, and to punish any offenders or violators thereof. The sovereign State of Mississippi has a vested right to enact laws and to punish criminals for violating such laws in furtherance of its sovereign police power. Spears v. Ellis, 386 F.Supp. 653, 655 (S.D.Miss. 1974).

The opinions of the three judge court and the Supreme Court of Mississippi should not be cast aside lightly, and we quote them with approval.

Spears' argument, as best we can discern it, is that the decisions by the Mississippi Supreme Court and the

three judge federal court, notwithstanding their severance[2] of section 1 from subsections (a) and (b), conflict with the opinions in *Roe v. Wade* and *Doe v. Bolton*. Section 1 of the Mississippi abortion statute is unconstitutional asserts Spears, because it does not distinguish between trimesters of pregnancy. She contends that the state may not regulate the termination of pregnancies in the first trimester and, therefore, the criminal sanctions imposed by section 1 of the statute are invalid. She argues that her only offense was to practice medicine without a license in violation of section 97–23–43 Miss.Code 1972, and that any state prosecution under section 97–3–3 is duplicitous and deprives her of equal protection by improperly classifying types of medical procedures. Stated differently, she contends that it is unconstitutional to sanction her criminally for the performance of an abortion during the first trimester when she could only be charged with practicing medicine without a license for performing other medical procedures. This argument is fundamentally unsound. To say that a person is due equal protection of the law is not to require identical treatment as long as the distinctions between classes of people or classes of crimes are not arbitrarily drawn. See, Forms of Limited Practice under the Medical Practice Act, 26 U.Miami L.R. 804, 809 (1972); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655, 1659 (1942); Connor v. Picard, 434 F.2d 673, 676 (1st Cir. 1970). *Roe v. Wade* explicitly recognized the state's interest in protecting health and medical standards within its borders and to that end stated, "[The state] may proscribe any abortion by a person who is not a physician . . . ." 410 U.S. 113, 165–

166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147, 184 (1973). In addition, the Mississippi abortion statute presently in issue is quite similar to the statute construed, severed, and partially validated in *Doe v. Bolton*.[3] We believe that the state's interest in protecting medical standards within its borders is sufficient to support Mississippi's criminal prosecution of non-physicians who perform abortions.

We also reject Spears' contention that the inclusion of unconstitutional portions of the Mississippi abortion statute in the indictment or jury instructions invalidates her second conviction. Sections (a) and (b) of the statute, which prior to their demise in the Supreme Court of Mississippi and the three judge federal court precluded the performance of an abortion by anyone unless performed in order to preserve the life of the mother or in the event of rape, merely imposed upon the prosecution a different burden of proof from that required under the still viable section 1. In other words, the state was obliged to prove at Spears' trials that the abortion (1) was not performed by a physician, or (2) was performed by a physician but not (a) as necessary for the preservation of the life of the mother, or (b) because of pregnancy occasioned by rape. As previously noted, the state has a legitimate interest in preventing the performance of abortions by non-physicians. Any other evidence introduced by the prosecution at Spears' trials was superfluous and in no way prejudicial.

### The Right to Confrontation

Spears next argues that she was denied her sixth amendment right to confront adverse witnesses[4] by the

2. For a general discussion of separability see Volume 2, J. G. Sutherland, Statutes and Statutory Construction, 174 (1943). In the 1972 cumulative supplement to Sutherland at 63–64 the author states, "The presumption against separability in absence of a separability clause is a weak one. In favor of separability in such cases, the Supreme Court has noted that "the cardinal principle of statutory construction is to save and not to destroy." Tilton v. Richard-

son, 403 U.S. 672, 684, 91 S.Ct. 2091, 2098, 29 L.Ed.2d 790, 802 (1971).

3. 410 U.S. 179, 201–204, 93 S.Ct. 739, 752–753, 35 L.Ed.2d 201, 218–19 (1973).

4. The sixth amendment to the United States Constitution states in part that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."

state's failure to produce all of the Bratley laboratory personnel who participated in any manner in conducting the pregnancy test.

The genesis of this argument was in the first Spears' trial during the course of which two physicians testified that based upon a report from the Bratley Clinic they believed Miss Ivey was pregnant at the time the abortion procedure was performed. The Supreme Court of Mississippi reversed the conviction, Spears v. State, 241 So.2d 148 (1970), stating:

> The laboratory technicians were not offered as witnesses. The doctors' testimony, though sworn, was merely a reiteration of that which had been related to them by unsworn witnesses. This was hearsay evidence which denied the defendant the basic and fundamental right to be confronted by the witnesses against her as well as the right of cross-examination. *Id.* 149 (citations omitted)

At Spears' second trial the state produced the laboratory technician who performed the pregnancy test. However, the prosecution again failed to afford Spears the opportunity to examine the nurse or the receptionist to whom Miss Ivey entrusted the urine specimen on which the test was performed. The prosecution did not establish precisely the chain of possession of the specimen through the laboratory. As previously stated, the Supreme Court of Mississippi affirmed the second conviction without opinion. Spears v. State, 257 So.2d 876, *cert. denied,* 409 U.S. 1106, 93 S.Ct. 893, 34 L.Ed.2d 686 (1973). As indicated earlier, the district court in its June 4, 1974 order denying the petition for writ of habeas corpus stated: "In this Court's opinion, neither of the evidentiary issues presented by the petitioner rise to a con-stitutional level within the meaning of 28 U.S.C. 2241(c)(3)." [5]

■ We agree with the district court that in the circumstances of this case Spears was not denied the right of confrontation. Absent such an error, the general rule obtains that questions regarding the admissibility of evidence are not subject to review in federal habeas corpus proceedings. Buchannon v. Wainwright, 474 F.2d 1006, 1007 (5th Cir. 1973); Heads v. Beto, 468 F.2d 240, 241 (5th Cir. 1972); Gonzales v. Lang, 469 F.2d 1075, 1076 (5th Cir. 1972).

Our conclusion is buttressed by the decision in Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213, 227 (1970) in which the Court stated:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." California v. Green, 399 U.S. at 161, [90 S.Ct. at 1936, 26 L.Ed.2d at 499].

In *Dutton v. Evans,* the Court initially noted that the sixth amendment right to confrontation does not perforce preclude the admission of any hearsay testimony. 400 U.S. 74, 83, 91 S.Ct. 210, 217, 27 L.Ed.2d 213, 222 (1970). See generally, Confrontation and Hearsay: A Look Backward, a Peek Forward, 1 Hofstra L.R. 32 (1973); Confrontation and The Hearsay Rule, 75 Yale L.J. 1434 (1966). The Court then articulated a number of considerations relevant to the question whether the right to confrontation has been abrogated. The Court held the admission of hearsay evidence in the circumstances of *Dutton* not violative of the right to confrontation primarily because: (1) "This case does not involve

---

The sixth amendment right to confrontation is a fundamental right made obligatory upon the states by the fourteenth amendment. Pointer v. State, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965).

**5.** 28 U.S.C. § 2241 provides in part:
(c) The writ of habeas corpus shall not extend to a prisoner unless—
(3) He is in custody in violation of the Constitution or laws or treaties of the United States . . .

evidence in any sense 'crucial' or 'devastating,' . . . ." 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213, 226. (2) It involved no misuse of a confession or prosecutorial misconduct. *Id.* (3) It did not involve a joint trial or the wholesale denial of cross-examination. *Id.* (4) The most important witness was available for cross-examination as were numerous other prosecution witnesses. *Id.* In addition, the Court closely scrutinized indications of the out-of-court declarant's reliability stating that such "indicia of reliability . : . have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Id.* 400 U.S. at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227. See, Favre v. Henderson, 464 F.2d 359, 363–64 (5th Cir. 1972).

■ In the instant case the state sought to prove Miss Ivey's pregnancy,[6] an essential element of the crime of abortion, primarily by four witnesses: Miss Ivey, two physicians, and a laboratory technician. Miss Ivey testified without objection[7] that she was pregnant at the time the abortion procedure was performed. The laboratory technician testified that she had a record indicating that Miss Ivey visited the Bratley Clinic in May 1969 for a pregnancy test. She described the procedure for collecting and labeling the specimen for purposes of the test, and testified that she had run the test on the Ivey specimen. The test result was positive according to the testimony of the laboratory technician. No objections were raised to her testimony. One of the physicians, a partner in the Bratley Clinic, testified, over objection, that a pregnancy test was run in his laboratory, that the result was positive, and that the result was forwarded to the second physician at University Hospital. The basis of the objection to his testimony was that he had not personally conducted the test but instead based his opinion on the laboratory technician's report. Testimony of the second physician, to the effect that Miss Ivey was pregnant, was also objected to on the ground that he had no personal knowledge of her pregnancy. The University Hospital physician had the opportunity to personally examine Miss Ivey prior to performing a complete hysterectomy and indicated that his physical findings at that time were consistent with the laboratory report on which he based his opinion of Miss Ivey's pregnancy.

■ We believe that this review of the record clearly demonstrates compliance with well established evidentiary rules and the teachings of *Dutton.*[8] The availability of the four key prosecution witnesses who testified in order to establish the pregnancy of Miss Ivey, provided the defense with ample opportunity to explore on cross-examination any deficiences in the state's proof on this point. See generally, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380

---

**6.** Pregnancy must be proved beyond a reasonable doubt. See, e. g., State v. Hoover, 252 N.C. 113, 113 S.E.2d 281, 286 (S.Ct.1960); Abortion, 1 Am.Jur.2d § 6 at 191 (1962); Annot. 46 A.L.R.2d 1393, 1404–1406 (1956).

**7.** It has been a long established procedural rule in this State that parties prejudiced by the introduction of inadmissible evidence are required to object to its admissibility at the time it is offered so that the trial judge may determine its admissibility before it is submitted to the jury. Moreover, error cannot be predicated upon admission of evidence to which no objection was made.

Henry v. State, 253 Miss. 263, 154 So.2d 289, 295 (1963), *vacated and remanded,* Henry v.

Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; see also, King v. State, Miss., 230 So.2d 209, 211 (1970); United States v. Fuentes, 432 F.2d 405, 409 (5th Cir. 1970).

**8.** Under *Dutton,* the mission of the confrontation clause is to assure that the trier of fact is provided with a satisfactory basis for evaluating the truth of the evidence presented to it, whether the evidence is hearsay or non-hearsay and whether the satisfactory basis is provided by cross-examination or otherwise. The Sixth Amendment is violated where there is no satisfactory basis. (footnote omitted)

Hoover v. Beto, 467 F.2d 516, 532 (5th Cir. 1972).

U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The reliability of the laboratory report is established, in the absence of the nurse and the receptionist, by the testimony of the laboratory technician who performed the pregnancy test and prepared the report and by the daily routine at the Bratley Clinic.[9] It is inconceivable that the testimony of the receptionist or nurse might significantly affect the jury's basis for evaluating the validity of the report and the opinions based upon it. If in fact any error was committed, it was merely evidentiary and does not reach constitutional proportions. To simply assert that the testimony of the physicians was hearsay is not enough in the circumstances of this case to indicate a violation of the confrontation clause of the sixth amendment. California v. Green, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489, 495–96 (1970); Hoover v. Beto, 467 F.2d 516, 522 (5th Cir. 1972); Park v. Huff, 506 F.2d 849, 860 (5th Cir. 1975).

Assuming arguendo that constitutional error was committed, we believe such error was harmless beyond a reasonable doubt. Favre v. Henderson, 464 F.2d 359, 365 (5th Cir. 1972); Hoover v. Beto, 467 F.2d 516, 538 (5th Cir. 1972). The prosecuting witness testified without objection that she was pregnant at the time the abortion procedure was performed. In Roeder v. State, 4 Md.App. 705, 244 A.2d 895, 898 (1968) the court stated:

> Here, the prosecuting witness testified as to her physical condition and symptoms, which were compatible with pregnancy and to her belief that she was pregnant. She was so secure in her belief that she sought out the appellant and endured the aforedescribed treatment. Her testimony further revealed that she aborted two days after appellant treated her. This testimony was sufficient to warrant the court's finding of pregnancy beyond a reasonable doubt.

See also, State v. Hoover, 252 N.C. 113, 113 S.E.2d 281, 284 (1960). Her testimony was supported by the physician who performed the hysterectomy and testified that his physical findings at that time indicated an earlier pregnancy. Finally, the laboratory technician testified without objection that the pregnancy test which she performed for Miss Ivey was positive. There was ample positive and direct evidence which fully supports a finding of pregnancy by the jury.

## Other Contentions

▮ The Mississippi abortion statute, quoted in the text of this opinion, *supra,* states in effect that any person who *attempts to procure* an abortion by a nonphysician shall be guilty of a felony. Spears infers from the appearance of Ivey and Jordan (Ivey's roommate) as witnesses against her that the state must have granted them immunity from prosecution in return for their testimony. Spears contends that the prosecution's failure to inform the jury of any arrangements between the state and the witnesses, and the court's curtailment of cross-examination in this regard, operated to deprive her of due process. The state unequivocally asserts that no promises were made in exchange for the testimony of the prosecuting witnesses. It further argues that the trial judge properly sustained objections to the overly broad and improperly predicated questions by which Spears sought to elicit information regarding any alleged "deal." The state points out that in Mississippi,

> *[W]hen a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be*

9. Spears v. State, 241 So.2d 148, 150–51 (Miss. 1970) (dissenting opinion); Park v. Huff, 506 F.2d 849, 858 (5th Cir. 1975).

*material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the offerer.* Priest v. State, 275 So.2d 79, 82 (Miss.1973). (emphasis in original)

Presented with nothing but conclusory allegations of improperly suppressed evidence of a bargain for testimony, and a record which indicates a failure to employ procedures available to fully develop such allegations, we agree with the district court that this argument raises no constitutional issues within the meaning of 28 U.S.C. § 2241(c)(3). See, Chavez v. Craven, 428 F.2d 185 (9th Cir. 1970).

■ Finally, Spears contends that she was statutorily authorized as a midwife to perform abortions. This argument is without merit. Section 97–3–3 Miss. Code 1972 explicitly requires that any person performing an abortion be a "duly licensed practicing physician." In the words of the three judge federal court which considered the constitutionality of the abortion statute: "There is nothing vague or indefinite about the term 'physician'. That is a commonly used and well known and accepted term which refers to a doctor of medicine who is practicing and licensed as such in Mississippi." Spears v. Ellis, 386 F.Supp. 653, 655 (S.D.Miss.1974). Spears infers from section 73–25–33 Miss.Code 1972, which defines the practice of medicine to include "the practice of obstetrics or midwifery" that she was acting as a physician within the purview of section 97–3–3 and is exempt from criminal sanction for performing abortions. The fallaciousness of her argument is demonstrated by a complete reading of section 73–25–33, the final clause of which states, "that nothing in this section shall apply to females engaged solely in the practice of midwifery." Stated another way, Spears erroneously reads section 73–25–33 as equating the practice of obstetrics with the practice of midwifery while in reality the statute clearly separately categorizes the practice of midwifery. Section 97–3–3 indicates, if there was

ever any genuine doubt about it, that the art of midwifery does not include the performance of abortions. Spears was not statutorily authorized to perform abortions.

Judgment affirmed.