# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 99-50596

————————

PEDRO L. GOCHICOA,

Petitioner-Appellee-
Cross-Appellant,

VERSUS

GARY L. JOHNSON,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellant-
Cross-Appellee.

————————————

Appeals from the United States District Court
for the Western District of Texas

————————————

December 29, 2000

Before SMITH and DENNIS, Circuit
Judges, and HARMON, District Judge.*

JERRY E. SMITH, Circuit Judge:

————————

* District Judge of the Southern District of Texas, sitting by designation.

Gary Johnson, on behalf of the State of Texas ("the state"), appeals the grant of a writ of habeas corpus under 28 U.S.C. § 2254, and the petitioner, Pedro Gochicoa ("Gochicoa") cross-appeals the district court's refusal to find prejudice from ineffective assistance of counsel. We affirm in part, reverse in part,

and render judgment in favor of the state.

## I.

The district court originally granted habeas relief to Gochicoa based on violations of the Confrontation Clause via hearsay testimony and related argument. *See Gochicoa v. Johnson* ("*Gochicoa I*"), 972 F. Supp. 380 (W.D. Tex. 1996). Concluding that the admission of the hearsay evidence did not violate the Confrontation Clause, we reversed. *See Gochicoa v. Johnson* ("*Gochicoa II*"), 118 F.3d 440 (5th Cir. 1997). On remand, the district court again granted habeas relief, this time based on the constructive complete denial of counsel. *See Gochicoa v. Johnson* ("*Gochicoa III*"), 53 F. Supp. 2d 943 (W.D. Tex. 1999).

## A.

While responding to a call complaining of a "suspicious person," Officer Victor Prieto of the Pecos, Texas, police department encountered Jorge Gochicoa ("Jorge"), Pedro Gochicoa's brother, sitting in a parked car near an apartment building.[1] As Prieto spoke to Jorge, Pedro approached the car from an alley, greeted Prieto "nervously," and said to his brother "let's go." Prieto questioned the Gochicoas briefly and then allowed them to leave.

Immediately after the brothers left, Deputy Andy Gomez arrived and told Prieto that the sheriff's department had also received a call, this time from a confidential informant, reporting that a man named Manuel Salcido was in the area selling heroin to Gochicoa. Gomez and Prieto then proceeded to search the alley

---

[1] This statement of the facts and proceedings underlying Gochicoa's conviction is adopted from *Gochicoa II*, 118 F.3d at 441-44.

from which Gochicoa had emerged.

As they searched, a young man named Michael Carrasco approached the officers and told them he had been watching the alley from an apartment window approximately 100 to 150 feet away. Carrasco reported that when Gochicoa rounded the corner of the alley and saw Prieto, he quickly reached into his pocket and made a motion as if he were throwing something to the ground. Carrasco, however, did not actually see anything leave Gochicoa's hand. Carrasco led the officers in the direction of Gochicoa's gesture, where they found a small red balloon containing nineteen dosage units of heroin. The officers found no other objects or refuse on the ground in the area.

Police arrested Gochicoa two days later and charged him with felony possession of heroin. At trial, the state did not identify the confidential informant or call the informant to testify, but mentioned the telephone call from the informant several times during its case in chief. During his opening statement, the prosecutor made the following remark: "Deputy Gomez . . . pulls up and tells [Prieto] that he has gotten a tip from a confidential informant concerning the defendant, and they start searching the area where [Gochicoa] was coming from for contraband that has been left behind."

During the prosecutor's direct examination of Prieto, the following exchange took place:

Q: Did you say anything to [Gochicoa]?

A: No, sir.

Q: Did you have any reason at this point in time to stop him, to investigate any crime that may have been committed, or

do anything else concerning [Gochicoa]?

A: No, sir, I had no reason.

Q: Did you in fact allow them to drive away?

A: Yes, sir.

Q: At about that time as they were driving away, did a peace officer approach your position?

A: Yes, sir.

Q: What officer was that?

A: It was Reeves County Sheriff's Deputy Andy Gomez.

Q: Okay. And what was Deputy Gomez's purpose in being thereSSdo you have any idea?

A: He advised me that he had some information that [Gochicoa] was selling . . . .

MR. PAINTER [Gochicoa's attorney]: Your Honor, I object. That's hearsay.

MR. ZAVODA [prosecutor]: I'll withdraw the question, Your Honor.

THE COURT: Sustained.

Gochicoa's counsel did not ask that the answer be stricken or that the jury be instructed to disregard the testimony. Moreover, despite the ruling, the prosecutor elicited testimony from Prieto that indirectly apprised the jury of the substance of the informant's out-of-court statement:

Q: Did you and Deputy Gomez have a conversation?

A: Yes, sir.

Q: Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search?

A: Yes, sir, we did.

Q: And where were you looking at? What area were you searching?

A: We was looking on the alley mostly from where I had seen [Gochicoa] coming from.

Q: All right. And what were you looking forSSyourself, personally?

A: Well, we were looking for any kind of drugs.

Gochicoa's counsel failed to object to this continuing line of questioning.

On redirect examination of Prieto, the prosecutor again introduced the confidential informant's telephone message into evidence without objection:

Q: Now you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter.

A: Yes, sir.

. . .

Q: You called him the other suspect. Was he another person that was supposed to be possessing heroin or

3

selling heroin?

. . .

A: Yes, sir.

. . .

Q: And [Manuel Salcido's residence is] the general location that [Gochicoa] was coming from, is that correct?

A: That is correct.

When Gomez took the stand, the prosecutor again acknowledged the earlier ruling and admonished Gomez not to reveal the substance of the statement.

Q: You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?

A: Yes, I did.

. . .

Q: Again, based upon the information you received from the confidential informant, did you and Victor PrietoSSOfficer PrietoSSconduct a search of the area where Officer Prieto was at?

A: Yes, we did.

Q: What were you looking for?

A: I was looking for heroin is what I was looking for.

Again, Gochicoa's counsel did not object. At closing, the prosecutor cited the substance of the informant's tip as direct evidence against Gochicoa.

What do we know by direct evidence? . . . We know that [Gochicoa] was out at the project on August 15, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at. We know that when he saw Victor PrietoSSOfficer PrietoSSthat Pedro got nervous. We heard that from two different witnesses, Officer Prieto and Michael Carrasco. We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was in this area in his home selling heroin and that [Gochicoa] was buying it at this particular time.

Gochicoa's counsel did not object to this argument.

On appeal, Gochicoa's attorney filed an *Anders* brief[2] and withdrew from the case. Gochicoa then filed an appeal *pro se*, and the Texas Court of Appeals affirmed his conviction in an unpublished opinion. Gochicoa filed a petition for writ of habeas corpus with the Texas Court of Criminal Appeals, which denied relief without written order. Gochicoa then filed the instant federal habeas petition.

Gochicoa asserts ineffective assistance of counsel and violation of his Sixth Amendment right of confrontation based on the hearsay ev-

_____

[2] *See Anders v. California*, 386 U.S. 738 (1967).

4

idence. The district court found that the confidential informant's statements were offered for the truth of the matter asserted, that they were hearsay under Texas law, that the hearsay violated Gochicoa's rights under the Confrontation Clause of the Sixth Amendment, and that the error had a substantial and injurious effect on the verdict under *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (setting forth "substantial and injurious effect" test for harmless error on habeas review). *See Gochicoa I*, 972 F. Supp. at 392. The court therefore granted the writ, declining to reach Gochicoa's claims of ineffective assistance of counsel. *See id*.

### B.

On appeal, we determined that the references to the confidential informant's tip were hearsay under Texas law but that the wrongful admission did not violate the Confrontation Clause under *Dutton v. Evans*, 400 U.S. 74, 87 (1970). *See Gochicoa II*, 118 F.3d at 445-48.[3] Although the hearsay did not fall within a firmly rooted exception to the hearsay rule or carry any particularized indicia of reliability, it was "neither crucial to the prosecution nor devastating to the defense in the context of the trial as a whole." *Id*. at 447.

We explained the *Dutton* "crucial" or "devastating" test as follows:

> The determination of whether the evidence is "crucial" or "devastating," . . . recognizes that the erroneous

admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was "crucial" or "devastating," the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal.

*Id*. We reasoned that the "crucial" and "devastating" prong of the Confrontation Clause test is "therefore somewhat redundant in light of the harmless error rule." *Id*. at 447 n.5.[4]

We concluded that the most important prosecution witness was not the hearsay declarant, but rather Carrasco, whom Gochicoa had a full and fair opportunity to cross-examine:

> [T]he tip from the informant standing alone did not connect Gochicoa to the balloon of heroin found in the public alleyway; only Carrasco's testimony established an immediate, albeit circumstantial, link between Gochicoa and the drugs. Carrasco testified that, as soon as Gochicoa spotted Officer Prieto, he reached into his pocket and made a gesture as if he were throwing something to the ground. On the basis of this information alone, Deputy Gomez found the balloon filled with heroin. Both Officer Prieto and Deputy Gomez testified that there were no other

---

[3] Because Gochicoa filed his habeas petition before enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), we applied pre-AEDPA standards of review. *See Gochicoa II*, 118 F.3d at 444.

[4] *Gochicoa II* interpreted *United States v. Sarmiento-Perez*, 633 F.2d 1092 (5th Cir. Unit A Jan. 1981), as establishing that, "although '[m]uch has been made of the "crucial" and "devastating" language in *Dutton* . . . ,' [the] test simply restates [the] harmless error rule." *Gochicoa II*, 118 F.3d at 447 n.5 (quoting *Sarmiento-Perez*, 633 F.2d at 1103 n.6).

objects or refuse on the ground within a ten yard radius of the area. Carrasco's testimony, coupled with Gochicoa's nervous behavior, presented strong circumstantial evidence that Gochicoa had exercised direct physical control over the heroin.

*Id.* at 447. We therefore reversed the grant of the writ of habeas corpus and remanded for consideration of Gochicoa's remaining claims. *See id*. at 448.

### C.

On remand, the district court considered Gochicoa's claim of ineffective assistance of counsel, based on his attorney's failure to object to the inadmissible hearsay and to seek disclosure of the informant's identity.[5] *See Gochicoa III*, 53 F. Supp. 2d at 943. Unless there is actual or constructive complete denial of the assistance of counsel, a petitioner asserting deficiencies in counsel's performance must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 692-93 (1984).

This court has described *Washington* as follows:

> To obtain relief, a criminal defendant must first demonstrate that counsel's performance was deficient. The defendant must also demonstrate that counsel's deficient performance prejudiced the defense. The proper standard for measuring counsel's performance under the first prong of [*Washington*] is reasonably effective assistance. That is, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Our scrutiny of counsel's performance must be highly deferential, and we must make every effort to eliminate the distorting effects of hindsight . . . . [T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

> To satisfy the prejudice prong of [*Washington*], the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case[,] [b]ut it is not enough . . . that the errors had some conceivable effect on the outcome of the proceeding.

*Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (internal citations and quotation marks omitted).

Relying on *Harris v. Warden*, 152 F.3d 430 (5th Cir. 1998), *cert. denied*, 526 U.S. 1053 (1999); *White v. Johnson*, 153 F.3d 197 (5th Cir. 1998), *cert. denied*, 525 U.S. 1149 (1999); and *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir.), *cert. denied*, 528 U.S. 969 (1999), the district court held that it was precluded from finding *Washington* prejudice on account of our holding in *Gochicoa II* that the

---

[5] The court noted that Gochicoa did not independently develop the two grounds, because they are both dependent on the trial hearsay. *See Gochicoa III*, 53 F. Supp. 2d at 955. Gochicoa likewise fails independently to develop the two grounds on appeal.

6

erroneous admission of hearsay was harmless. *See Gochicoa III*, 53 F. Supp. 2d at 950. The court found a constructive complete denial of assistance of counsel, however, concluding that the errors of counsel were so egregious that the prosecution's case was never subjected to meaningful adversarial testing, and therefore granted habeas relief. *See id.* at 950, 957.

Gochicoa moved to amend the judgment to add an alternative basis, namely that the writ was also granted under the *Washington* test. The court denied the motion but granted a certificate of probable cause, allowing Gochicoa to appeal its interpretation of the preclusive effect of our previous opinion.

## II.

Gochicoa's trial counsel, Ted Painter, failed to object to the inadmissible hearsay and to seek disclosure of the confidential informant's identity under one of the exceptions enumerated in TEX. R. CRIM. EVID. 508.[6] The district court held that these failures constituted a constructive complete denial of counsel and therefore granted the writ without considering *Washington* prejudice. *See Gochicoa III*, 53 F. Supp. 2d at 956-57. We review findings of fact for clear error and conclusions of law *de novo*. *See Gochicoa II*, 118 F.3d at 444. Both of the *Washington* prongs and constructive denial of counsel are mixed questions of law and fact subject to *de novo* review.[7]

---

[6] The rule allows the state to refuse to disclose an informant's identity, subject to three exceptions. *See Gochicoa III*, 53 F. Supp. 2d at 956.

[7] *See Washington*, 466 U.S. at 698; *Childress v. Johnson*, 103 F.3d 1221, 1224 (5th Cir. 1997); *Motley*, 18 F.3d at 1226.

When a criminal defendant receives no meaningful assistance from his court-appointed lawyer, he is constructively denied his Sixth Amendment right to counsel and need not prove *Washington* prejudice.[8] "A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Jackson,* 150 F.3d at 525 (quoting *Childress*, 103 F.3d at 1229).

We have found constructive denial in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense; and have stated that constructive denial will be found when counsel fails to subject the prosecution's case to any meaningful adversarial testing. *See id.* For example, where counsel's sole duty was to execute a waiver of petitioner's right to jury trial, and therefore counsel was appointed one to two minutes before the plea, never investigated the facts, never discussed the applicable law with petitioner, and never advised petitioner of the rights petitioner was surrendering, petitioner was constructively denied counsel. *See Childress*, 103 F.3d at 1223-24, 1228 (Petitioner "does not argue that he had a bad lawyer in the . . . proceedings, but that he had none at all, except for the purpose of waiving a jury trial.").

In contrast, we have refused to find constructive denial where defense counsel investigated only certain issues, where

---

[8] *See Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998) (citing *United States v. Cronic*, 466 U.S. 648 (1984)), *cert. denied*, 526 U.S. 1041 (1999).

counsel's trial presentation was "somewhat casual," where counsel failed to pursue a challenge based on racial bias in jury selection, to object to a variation between the indictment and the jury charge, or to raise a meritorious issue on appeal. *See Jackson*, 150 F.3d at 525. Thus, prejudice is presumed, and *Washington*'s second prong inapplicable, only "when the defendant demonstrates that counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all." *Id.* (internal quotation marks omitted). "When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice." *Id.* (internal quotation marks omitted). The critical question "is whether the [petitioner] asserts that he received incompetent counsel, or none at all." *Childress*, 103 F.3d at 1230.

According to Gochicoa, Painter met with him twice, once in the county jail after his arrest and once just before trial began. Painter testified that he is unsure how many times he met with Gochicoa, but that he reviewed the district attorney's file on the case, filed a general motion for discovery and inspection of evidence, visited the crime scene and took pictures, questioned the police officers, researched the confidential informant issue, and questioned the witnesses, including Michael Carrasco. Painter did not file a specific motion to disclose the confidential informant's identity, nor did he file any motions *in limine* to exclude information of, or evidence from, the confidential informant. Nevertheless, he cross-examined the state's witnesses, made two successful objections (one based on hearsay), called Prieto as an adverse witness, and called two witnesses during the punishment phase.

The court's conclusions that Painter "wholly abdicated his role in the adversarial process" and that "Painter's performance was not merely incompetent, it was inert," *Gochicoa III*, 53 F. Supp. 2d at 954, 955, are unsupported and erroneous. "When the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel." *Goodwin v. Johnson*, 132 F.3d 162, 176 n.10 (5th Cir. 1997).

Painter testified that he failed to object to the hearsay beyond his one successful objection because he believed that a less argumentative approach was more effective, because he believed the hearsay to be immaterial, and because he planned to concentrate his defense on witness Michael Carrasco. In particular, he thought "the thrust of the defense in this case was on a possession issue and the credibility of Mr. Carrasco and his location and how far away from the scene he was." Painter further believed that he did request the identity of the confidential informant through his general motion for discovery, requesting information about "[t]he persons whom the state does not intend to call to testify in this case but who the state knows possesses [sic] relevant information concerning the offense."

Irrespective of whether these allegedly strategic decisions were erroneous, Painter presented some meaningful assistance to Gochicoa. The court therefore erred by applying the *Cronic* constructive-denial test rather than the *Washington* ineffective-assistance test.

### III.

Having determined that the court erred by granting habeas relief based on constructive

denial of counsel, we must consider Gochicoa's cross-appeal based on *Washington*. Gochicoa bears the burden of proving both *Washington* prongs, and if one of the elements is determinative, we need not consider the other. *See Washington*, 466 U.S. at 697; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

The court found that Painter lacked credibility as a witness and that his failure to object arose out of ignorance of the law, not out of an informed trial strategy. *See Gochicoa III*, 53 F. Supp. 2d at 953-55. The court likewise rejected Painter's explanation for his failure to file a motion to disclose the informant's identity.[9] *See id*. at 955-56. These findings would certainly satisfy the first prong of *Washington*, deficient performance. The court held, however, that it was precluded from finding *Washington* prejudice based on our prior opinion. *See id*. at 950.

In *Harris*, 152 F.3d at 440, we held that an erroneous jury instruction was harmless error

[9] The court was especially diligent in reviewing Painter's alleged strategy, because Painter had been subject to bar discipline and had abused alcohol. *See Gochicoa III*, 53 F. Supp. 2d at 950-51. Painter was appointed to represent Gochicoa in January 1992, at which point he had been licensed for approximately three years following a six-year suspension. When he was appointed to represent Gochicoa, Painter had neglected a legal matter and failed to keep a client apprised of her case, which failings would ultimately lead to his being disbarred in 1994. In the disbarment proceeding, Painter stated that "[d]uring the years 1990, 1991, and 1992, my addiction to alcohol greatly affected my professional and personal life." There is no evidence, however, that Painter's judgment was affected by alcohol abuse during Gochicoa's trial.

and that, accordingly, counsel's failure to object to that instruction could not constitute ineffective assistance. Likewise, in *White*, 153 F.3d at 208, we stated: "[O]ur conclusion that the purported . . . error was harmless forecloses any argument that deficiency in the performance of [petitioner's] trial counsel precipitated by the . . . error was prejudicial.".[10]

Given our earlier determination that the "crucial" and "devastating" prong of the *Dutton* Confrontation Clause test is equivalent to harmless error,[11] our previous holding that the

[10] *See also Mayabb*, 168 F.3d at 869 (noting that harmless error in a jury charge cannot be the basis for *Washington* prejudice).

[11] The prior panel's conflation of the harmless error standard with the "crucial" and "devastating" prong of *Dutton*, and its decision that the error was harmless, bind us as the law of this circuit. Of course, one panel's *dictum* cannot bind future panels. *See, e.g.*, *Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 252 (5th Cir. 1998). A faithful reading of *Gochicoa II*, however, does not allow the conclusion that the statements at issue were mere *dictum*. A statement should be considered *dictum* when it "could have been deleted without seriously impairing the analytical foundations of the holding—[and], being peripheral, may not have received the full and careful consideration of the court that uttered it." *In re Cajun Elec. Power Coop, Inc.*, 109 F.3d 248, 256 (5th Cir. 1997) (citing *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir.1986)) (modification in original, quotation marks omitted).

When confronting decisions of prior panels, however, we are bound by "not only the result but also those portions of the opinion necessary to that result . . . ." *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996). Moreover, "[a]s a general rule, the
(continued...)

inadmissible hearsay did not satisfy this *Dutton* prong precluded the district court from finding the hearsay prejudicial under *Washington*. *See Gochicoa II*, 118 F.3d at 447. Because the hearsay is not sufficiently damaging to warrant reversal as a Confrontation Clause violation (meaning any error was harmless), it is not sufficiently damaging when re-framed as ineffective assistance of counselSSit remains harmless.[12] We therefore REVERSE the grant

of habeas relief, AFFIRM the refusal to consider *Washington* prejudice, and RENDER judgment in favor of the state.

---

[11](...continued)
principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law." *County of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 668 (1989) (Kennedy, J. concurring and dissenting), *quoted in Seminole Tribe*, 517 U.S. at 67.

In *Gochicoa II*, we plainly relied on the concept of harmless error when analyzing the hearsay testimony under *Dutton*: First, we explained that *Dutton*'s "crucial" and "devastating" prong "recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial . . . ." *Gochicoa II*, 118 F.3d at 447. We then proceeded to equate that prong with harmless error analysis, *see id.* at 447 n.6, before finally concluding that the admitted testimony was neither crucial nor devastating "in the context of the trial as a whole." *Id.* at 447. Thus, our finding of harmless error in *Gochicoa II* is entitled to respect not only as necessary to the result, but also as an "explication of the governing rules of law" in this case. *See County of Allegheny*, 492 U.S. at 668.

[12] Gochicoa urges us to reverse the district court's conclusion that our earlier holding—that the hearsay testimony was not "crucial" or "devastating" for purposes of a *Dutton* challenge under the Confrontation Clause, *see Gochicoa II*, 118 F.3d at 447—precludes it from inquiring into
(continued...)

[12](...continued)
whether the error was indeed harmless under *Washington*. Gochicoa contends that, because his *Washington* challenge involves his "right, under Texas law, to have [hearsay testimony] excluded," our earlier analysis of the testimony under *Dutton* allowed testimony that Texas law might have excluded.

Nonetheless, the prior panel concluded that the disputed testimony "was neither crucial to the prosecution nor devastating to the defense in the context of the trial as a whole." *Id.* In light of our equation of *Dutton*'s crucial and devastating prong with the harmless error standard, *see id.* at 447 n.6, and irrespective of whether the testimony might have been excluded under Texas law, its inclusion is harmless as a matter of law, and the district court correctly concluded that it could not revisit the issue.

DENNIS, Circuit Judge, concurring in part and dissenting in part:

I concur in part II of the majority opinion insofar as it holds that the district court erred in finding a constructive denial of counsel. I disagree, however, with part III, which rejects Gochicoa's cross-appeal based on Strickland. Therefore, I respectfully dissent.

**I.**

Gochicoa II's suggestion that the "crucial" and "devastating" factor of the Dutton Confrontation Clause test is equivalent to the harmless error test for erroneously admitted hearsay was an erroneous dictum; actually, Gochicoa II did not apply a harmless error test at all. Instead, it applied an inverted sufficiency of evidence test: If the erroneously admitted hearsay evidence "standing alone" was not a sufficient basis for a conviction, it therefore is not "crucial and devastating" and hence could not be grounds for reversal as a Confrontation Clause violation.

(a)     The Erroneous Dictum of Gochicoa II

The Supreme Court and this court have in the past taken great pains to point out that hearsay errors and Confrontation Clause violations are not fungible. On the contrary, they have held that the overlap between an admission of hearsay and a Confrontation Clause violation is not complete; either may

11

occur without the other. This court, in <u>Favre v. Henderson</u>, 464 F.2d 359, 362 (5th Cir. 1972) (quoting <u>Green v. California</u>, 399 U.S. 149, 155-156 (1970)), stated:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. * * * The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

See also <u>Dutton v. Evans</u>, 400 U.S. 74, 86 (1970) ("It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this court has never equated the two, and we decline to do so now."); <u>United States v. Sarmiento-Perez</u>, 633 F.2d 1092, 1099 (5th Cir. 1981) ("Conceptually, at least, evidence sufficiently reliable to qualify for admission under a recognized exception to the hearsay rule might yet offend confrontation values; and, conversely, the admission of incriminating hearsay evidence might well avoid impinging confrontation rights.")(citing WEINSTEIN'S EVIDENCE ¶ 800[04]; MCCORMICK ON EVIDENCE, § 252); <u>Cupit v. Whitley</u>, 28 F.3d 532, 536 (5th Cir. 1994) ("Although the confrontation clause and the hearsay rule are related,

12

the Sixth Amendment right to confrontation does not perforce preclude the admission of any hearsay testimony."); <u>Johnson v. Blackburn</u>, 778 F.2d 1044, 1051 (5th Cir. 1985) (same); <u>Spears v. Circuit Court, Ninth Judicial District</u>, 517 F.2d 360 (5th Cir. 1975) (same) (citing, inter alia, <u>Hoover v. Beto</u>, 467 F.2d 516 (5th Cir. 1972); <u>Park v. Huff</u>, 506 F.2d 849 (5th Cir. 1975)).

In my opinion, the panel in <u>Gochicoa II</u> misinterpreted and misapplied the controlling precedents of the Supreme Court and this Circuit in concluding that there had been no violation of Gochicoa's Confrontation Clause right. Contrary to those decisions, <u>Gochicoa II</u> seeks to truncate and prioritize the factors of <u>Dutton</u> and progeny to be taken into consideration in determining whether a Confrontation Clause violation has occurred. The Supreme Court has never said that only the first and fifth factors need be considered or that any factor can be totally disregarded. Indeed, this court has repeatedly demonstrated the importance of considering all the <u>Dutton</u> factors. <u>See, e.g.</u>, <u>Cupit</u>, 28 F.3d at 537 (analyzing the five <u>Dutton</u> factors separately and stating that courts must assess "a host of considerations" in deciding whether or not wrongfully admitted hearsay evidence violates the Confrontation Clause); <u>Johnson v. Blackburn</u>, 778 F.2d 1044, 1051 (5th Cir. 1985) (placing emphasis on the first and fourth factors of the <u>Dutton</u>

13

test only because factors two and three were not applicable); Spears, 517 F.2d at 365-66 (examining the five Dutton factors); Favre, 464 F.2d at 363-64 (conducting an individual examination of nine factors described in Dutton). To focus exclusively on the first and fifth factors ignores not only precedent in this Circuit but also important constitutional considerations.

Nor has the Supreme Court or this court ever said that the Dutton "crucial" and "devastating" prong is really a substitute for a harmless error test rather than one of the factors to be weighed in determining whether a Confrontation Clause violation has occurred. In fact, Dutton used those words to distinguish prior cases in which much more damaging confrontation errors had occurred. Gochicoa II badly misread the meaning of this Circuit's discussion of Dutton's phraseology in Sarmiento-Perez, 633 F.2d at 1103 n.6. Before penning footnote 6 of Sarmiento-Perez, Judge Tate surveyed Supreme Court precedent. He noted that,

14

In _Dutton v. Evans_, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court held that the right of confrontation was not violated by the admission of a coconspirator's inculpatory out-of-court declaration that was admissible under the state's liberal hearsay exception, but inadmissible under the narrower federal hearsay exception. The _Dutton_ court focused upon the now- familiar "indicia of reliability" standard as the threshold of admissibility under the confrontation clause. . .

_Sarmiento-Perez_, 633 F.2d at 1103. In so holding, the _Dutton_ court distinguished earlier Supreme Court precedent by stating:

This case does not involve evidence in any sense "crucial" or "devastating," as did all the cases just discussed. It does not involve the use, or misuse, of a confession made in the coercive atmosphere of an official interrogation, as did _Douglas_.... It does not involve any suggestion of prosecutorial misconduct or even negligence, as did ... _Douglas_....

15

Id. (quoting Dutton v. Evans, 40 U.S. at 86-87).

At the bottom of the above paragraph, Judge Tate attached footnote 6. Judge Tate did not say that the "crucial" and "devastating" language in Dutton and Douglas "simply restates harmless error rule." Gochicoa II, 118 F.3d at 447 n.5. In footnote 6 of Sarmiento-Perez Judge Tate actually said:

>Much has been made of the "crucial" and "devastating" language in Dutton and Douglas. The thrust of the language in these decisions may be read as intending nothing more than the observation that the evidence at issue was or was not sufficiently damaging to the defense to be considered grounds for reversal:
>
>This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against the petitioner. The circumstances are therefore such that "inferences from a witness's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."

16

Sarmiento-Perez, 633 F.2d at 1103 n.6 (quoting Douglas v. Alabama, 380 U.S. 415, 420 (1965) (citations omitted)).

Going from bad to worse, the court in Gochicoa II, after mistakenly equating "crucial and devastating" with "harmless error," proceeded to ignore the hearsay "harmless error" test and to convert the "crucial and devastating" factor into an inverted pro-prosecution sufficiency of evidence test. Almost immediately after its misinterpretation of Sarmiento-Perez, the court proceeded to reject the district court's finding that the hearsay was "crucial and devastating" because "the tip from the informant standing alone did not connect Gochicoa to the balloon of heroin found in the public alleyway; only Carrasco's testimony established an immediate, albeit circumstantial, link between Gochicoa and the drugs." Gochicoa II, 118 F.3d at 447 (emphasis added). "Although the informant's tip certainly bolstered the state's case," the Gochicoa II court concluded that "the hearsay evidence was neither crucial nor devastating in the context of the trial as a whole."[13] Id. In

_____

[13] In contrast to the court's approach in Gochicoa II, other courts have applied the "crucial and devastating" prong of Dutton in an even-handed way more in keeping with Dutton's holding that it be considered as merely one of many factors or considerations. For example, in Cupit, the court "[v]iew[ed] the evidence about which Cupit complained through the . . . prism of considerations" of the other four factors. Cupit, 28 F.3d at 537. See also Favre, 464 F.2d at 364-67 (evaluating the evidence without explicitly applying a formalistic test); Spears, 517 F.2d at 367 (employing a looser (continued...)

17

other words, <u>Gochicoa II</u> reasoned incoherently that if erroneously admitted hearsay evidence was by itself insufficient to support the defendant's conviction, it could not have been "crucial and devastating;" therefore, it must have been harmless and not reversible error.

> (b) <u>The Proper Confrontation Clause Violation And Harmless Error Tests</u>

In a proper Confrontation Clause analysis under <u>Dutton</u>, the court must, after analyzing the <u>Dutton</u> factors, also determine the nature of any error committed before deciding whether it justifies reversal. <u>See</u> <u>Cupit</u>, 28 F.3d at 537. <u>See also</u> <u>Spears</u>, 517 F.2d at 367 (applying a harmless error test after examining the factors in <u>Dutton</u>); <u>Favre</u>, 464 F.2d at 366 (same); <u>Hoover v. Beto</u>, 467 F.2d 516, 538 (5th Cir. 1972) (same). Because the errors of Gochicoa's counsel were his repeated failures during trial to recognize and object to the introduction of the inculpatory hearsay of an out-of-court accuser, they were trial errors.[14]

---

[13](...continued) "significantly effect test" and stating "[i]t is inconceivable that the testimony of the receptionist or nurse might *significantly affect* the jury's basis for evaluating the validity of the report and the opinions based upon it") (emphasis added); <u>Gochicoa II</u>, 118 F.3d at 449 n.8 (Jolly, J., dissenting) ("I can agree that the properly admitted evidence in this case was sufficient to allow a rational jury to convict Gochicoa, but that is not a question before this court today. A Confrontation Clause violation may occur when inadmissible evidence was devastating to the defense, even if the properly admitted evidence, viewed in isolation, is sufficient to sustain the verdict.").

[14] In addition to trial error, there are two other types of error. The second type is structural error that vitiates the proceedings. <u>See</u> <u>Cupit</u>, 28 F.3d at 537-38. A "[s]tructural error is error 'affecting the framework within which a trial proceeds.'" <u>White v. Johnson</u>, 153 F.3d 127, 201-02 (5th Cir. 1998) (quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991)). This type of error is so serious that it cannot be considered harmless (e.g., a biased judge or the denial of counsel to the defendant). <u>See</u> <u>Cupit</u>, 28 F.3d at 537-38. The third type of error recognized by the Court in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), is that of "an unusual case" in which "a (continued...)

18

Indeed, the court in Cupit explicitly stated that admission of hearsay testimony is classified as a "classic trial error," so actual prejudice must be shown and a harmless error test should be conducted. In Cupit, a federal habeas proceeding concerning Cupit's second degree murder conviction in state court, this Circuit held that the testimony of investigating officers and witnesses about hearsay statements of an alleged murder victim prior to his death did not violate the accused's Confrontation Clause rights. Cupit, 28 F.3d at 536-37. But assuming that they did, the court found that their admission was harmless error under Brecht, explaining that Brecht required the application of the standard in Kotteakos v.

United States, 328 U.S. 750 (1946) ("whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict'"), instead of the "harmless beyond a reasonable doubt" standard in Chapman v. California used to determine the effect of constitutional errors on direct review. See Cupit, 28 F.3d at 537-39; see also United States v. Chapman, 193 F.3d 375, 379 (5th Cir. 2000).

Under this habeas "harmless error" test, the conviction cannot stand if the error had "substantial influence" or "if one is left in grave doubt." Cupit, 28 F.3d at 538 (citing Kotteakos, 328 U.S. at 765; Brecht, 113 S.Ct. at 1724 (Stevens, J. concurring)). "Our task . . . is to determine . . . whether the petitioner has successfully established in our minds grave doubt as to the

---

14(...continued)
deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." Id. at 638 n.9.

19

question of whether the assumed wrongfully admitted hearsay influenced the conviction." Id. at 538-39 (citing Lowery v. Collins, 996 F.2d 770, 773 (5th Cir. 1993)). Thus, in this last respect, the Cupit court anticipated the Supreme Court's holding in O'Neal v. McAninch, 513 U.S. 432, 436 (1995) ("When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining jury's verdict,' that error is not harmless. And, petitioner must win."); see also California v. Roy, 519 U.S. 2 (1996). By "grave doubt," the Supreme Court explained, "we mean that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal, 513 U.S. at 435. Thus, the ultimate question becomes "whether the petitioner has successfully established in our minds grave doubt as to the question of whether the assumed wrongfully admitted hearsay influenced the conviction." Cupit, 28 F.3d at 538-39. In evaluating the trial error, the "strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless." Id. at 539.

While the court in Gochicoa II purported to rely on a harmless error test, it is clear that the majority did not undertake the above Brecht-O'Neal-Roy analysis. The text of the opinion evidences use of

20

a different standard. Because the "crucial and devastating" <u>Dutton</u> factor is not the same as the <u>Brecht</u> "harmless error" test, and is certainly different from <u>Gochicoa II</u>'s eccentric "inverted sufficiency test," the <u>Gochicoa II</u> majority fell into compounded legal errors and failed to apply the correct Confrontation Clause or harmless error analysis.

## II.

Because <u>Gochicoa II</u>'s errors were either dictum or the clearly erroneous application of an incorrect legal principle that would work a manifest injustice, we are not bound by those mistakes as the law of this case; in <u>Gochicoa II</u> we must apply correct legal principles in deciding the ineffective assistance of counsel claim. To determine the binding effect of <u>Gochicoa II</u> on this panel, the law of the case doctrine must be applied. First, the doctrine of the law of the case "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states of the same case.'" <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)). This rule serves to promote policies of both finality and judicial efficiency. <u>See id.</u> With respect to rules of law, the law of the case doctrine applies even on interlocutory appeals. <u>See</u> <u>Royal Ins. Co. v. Quinn-L Capital Corp.</u>, 3 F.3d

21

877, 881 (5th Cir. 1993). With regard to factual matters, this doctrine applies only to issues actually decided and does not apply to *obiter dicta*. See 18 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 134.20[3], at 134-45 (3d ed. 1999) ("The doctrine does not apply to statements made by the court in passing, or stated as possible alternatives.") If the issue has been decided either explicitly or by implication, however, the law of the case doctrine governs. See Royal Ins., 3 F.3d at 881.

As applied in this Circuit, the law of the case doctrine is not absolute, and, in fact, application of this doctrine is discretionary. Courts, however, "will generally refuse to revisit a prior panel's decision unless '(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice.'" Free v. Abbott Labs., 164 F.3d 270, 272-73 (5th Cir. 1999) (quoting North Miss. Comms., Inc. v. Jones, 951 F.2d 652, 656 (5th Cir. 1992)).

In the present case, we are not bound by the dictum or the rule of decision adopted by Gochicoa II for several reasons. First, Gochicoa II is not law of the case with regard to ineffective assistance of counsel because Gochicoa II did not address whether the admission of the hearsay evidence was harmless error

22

under the Brecht-Cupit analysis. Instead, the court in Gochicoa II, while purporting to examine harmless error by its misguided application of the "crucial and devastating" factor and an inverted sufficiency of evidence test, not only failed to correctly apply the Dutton Confrontation Clause factors but also failed to conduct the Brecht harmless error test.[15]

---

[15] Although the State of Texas contends that White v. Johnson, 153 F.3d 197 (5th Cir. 1998), and Harris v. Warden, 152 F.3d 430, 440 (5th Cir. 1998), bar consideration of the ineffective assistance of counsel claim (because an earlier finding of harmless error prevents examination of the ineffective assistance of counsel claim), these cases prove wholly inapplicable given the finding that the court in Gochicoa II did not apply the harmless error test at all. Moreover, because Mayabb v. Johnson, 168 F.3d 863 (5th Cir. 1999), was not a habeas case and, therefore, may have employed a different harmless error standard, that case is doubly inapplicable.

Furthermore, a finding by the court in Gochicoa II that the error was not "crucial and devastating" does not bar this court from considering Gochicoa's ineffective assistance of counsel claim. This Circuit has recognized that an error does not have to be "crucial and devastating" to be harmful under Brecht. "[H]earsay testimony that is neither 'crucial' nor 'devastating' under Dutton may nevertheless amount to reversible error under Kotteakos." United States v. Arias-Diaz, 497 F.2d 165, 172 (5th Cir. 1974). Consequently, even a proper finding that an error was not "crucial and devastating" does not bar a subsequent finding of a "substantial and injurious" error. Thus, this court should address Gochicoa's Sixth Amendment claim on a clear slate, free of the clearly erroneous and manifestly unjust rules of law applied by Gochicoa II.

Assuming, *arguendo*, that the "crucial and devastating" finding were broad enough to

23

subsume the Brecht harmless error test, this court would not be bound by Gochicoa II because a "decision that was clearly erroneous and would work a manifest injustice" is an exception to the law of the case doctrine. Free, 164 F.3d at 272-73. In the pithy words of the Seventh Circuit, Gochicoa sets off the clearly erroneous standard because the topsy-turviness of its rule application "strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish." Id. (quoting Parts & Elec. Motors, Inc. v. Sterling Elec. Inc., 866 F.2d 228, 233 (7th Cir. 1988)). As the district court stated, "Gochicoa was represented by counsel whose inaction and lack of basic knowledge resulted in a guilty verdict followed by a sentence of sixty (60) years in Texas prison."

## III.

Finally, application of Strickland to the present case requires the conclusion that Gochicoa was denied effective assistance of counsel. To determine whether the plaintiff was denied effective assistance of counsel, courts must apply the two-pronged test of Strickland, 466 U.S. 668, 692-93 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must first show that counsel's performance was deficient. That is, he must show that "counsel's representation fell below an objective standard of reasonableness." Id. This showing is often difficult, as the Supreme Court employs a "highly deferential" approach that accords a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The second prong of the test requires that the petitioner show prejudice due to counsel's performance. See id. In defining prejudice, this Circuit has held that

the defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The defendant need not show "that counsel's deficient conduct more likely than not altered the outcome in the case." But it is not enough, under Strickland, "that errors had some conceivable effect on the outcome of the proceeding."

Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693-94)) (internal citations omitted).

Concerning the first prong of Strickland, there appears to be little doubt that counsel's inept performance was deficient. As the district court observed, knowledge of the very basic rules of evidence is essential to any competent representation in a criminal trial. By failing to object to "obviously inadmissible hearsay," Gochicoa's counsel demonstrated his ignorance of these basic rules. The district court unequivocally stated, "Except for defense counsel, everyone in the courtroom on the day of the trial understood that the statements of the informant were hearsay...." Order Granting Habeas Writ at 17.

With respect to the prejudice prong, petitioner can clearly demonstrate a reasonable probability that, but for counsel's deficient performance, "the result of the proceeding would have been different." The hearsay testimony established a substantial and direct link between Gochicoa and the heroin dealer who lived in the very street and block where Gochicoa was seen walking and the illegal drugs were later found. Without the tipster's out-of-court statement that Gochicoa was

buying from that dealer at that location at that time, the state's case, as likely as not, would have foundered because it would have rested only upon the tenuous basis of Gochicoa's nervousness and Carrasco's testimony that at dusk, he saw Gochicoa from 150 feet make a throwing motion but did not see what object, if any, he threw. See Gochicoa II, 118 F.3d at 442, 447. As Judge Jolly noted in his dissent, "[T]he evidence that Gochicoa was in the area to buy heroin [from an identified dealer who lived there] provides a crucial link between the defendant and the drugs." Id. at 449 (Jolly, J., dissenting). Moreover, the prosecution's repeated reliance on the hearsay evidence underscores its importance. See id. (Jolly, J., dissenting). Even the majority in Gochicoa II admits that the remaining evidence was solely "circumstantial" and that the hearsay testimony "certainly bolstered the state's case. . . ." Id. at 447. Thus, any confidence in Gochicoa's conviction is undermined because, but for counsel's deficient performance in allowing the admission of the hearsay, a reasonable probability exists that the result of the proceeding would have been different.

We should not assume that we are bound by Gochicoa II's distorted application of the "crucial and devastating" factor as an inverted sufficiency of evidence test. Thus, an independent evaluation should be undertaken with respect to Gochicoa's ineffective assistance of counsel claim applying the Strickland analysis. Accordingly, I would AFFIRM the grant of habeas, REVERSE the district court's refusal to consider Strickland prejudice, and RENDER judgment on the ineffective assistance of counsel claim in favor of Gochicoa.

26